In re the MARRIAGE OF Martha Jan CARTER and Brian Earl Carter.

Martha Jan Carter, Petitioner–Respondent,

v.

Brian Earl Carter, Respondent–Appellant.

No. 22509.

Missouri Court of Appeals, Southern District, Division Two.

July 30, 1999.

Motion for Rehearing or Transfer Denied Aug. 20, 1999.

Craig A. Smith, Daniel, Clampett, Powell & Cunningham, Springfield, Robert F.

**564**

Summers, David A. Sosne, Summers, Compton, Wells & Hamburg, P.C., St. Louis, for Appellant.

Gail L. Fredrick, Regina K. Dever, Fredrick, Rogers & Vaughn, P.C., Springfield, for Respondent.

PHILLIP R. GARRISON, Chief Judge.

Brian Earl Carter ("Husband") appeals from the trial court's order entered pursuant to his motion to determine the amount of child support arrearage owing to Martha Jan Carter ("Wife"). He claims that he should have been, but was not, given credit against his child support obligation for various amounts he paid to Wife and third parties. We reverse in part, affirm in part, and remand.

During the pendency of Wife's earlier dissolution of marriage action, she filed a motion for a pendente lite ("PDL") order which was sustained, and Husband was ordered to pay $125 per week as temporary maintenance and $20 per week for each of their two children as temporary child support beginning July 21, 1990. He was also ordered to pay utilities and other expenses of the marital home. Husband made all of the payments included in the PDL order. On October 14, 1992, the trial court entered a dissolution decree in which it ordered neither party to pay maintenance to the other, but ordered Husband to pay $475 per month per child as child support, retroactive to November 1, 1990, with the payments to be made to the circuit clerk's office.[1] Husband thereafter made some child support payments directly to Wife rather than through the circuit clerk's office. Wife subsequently filed a Notice of Income Withholding pursuant to Section 452.350, RSMo Cum.Supp.1992, which resulted in child support payments being withheld through the circuit clerk's office beginning in February 1993. The income withholding resulted in payment of less than the $950 per month owing on child support, and Wife caused a series of garnishments to be served. This also resulted in payment of less than the total amount of child support owing.

Husband filed a motion to determine the amount of child support arrearage on February 7, 1996. After an evidentiary hearing, the court held that there was a child support arrearage of $28,649, plus accrued interest, after giving credit for child support payments made to Wife under the PDL order after November 1, 1990, and all other child support payments made through the circuit clerk's office. He appeals contending that he should have also received credit against his child support obligation for the other payments made pursuant to the PDL order, including those for temporary maintenance and utility bills; payments made directly to Wife rather than to the circuit clerk's office; in kind payments he made for delinquent real estate taxes on the marital residence, to stop a foreclosure of the property, and utilities furnished for the marital home; and the value of a Kubota tractor which he was awarded in the dissolution and he claims Wife sold.

■ The standard of review of a court-tried case, found in Rule 73.01(c),[2] was construed in *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976). The judgment will be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Id.* at 32. Under this standard, considerable deference is accorded judgments turning on evidentiary and factual evaluations by the trial court. *In re Marriage of Fry,* 827 S.W.2d 772, 775–76 (Mo.App. S.D.1992). No such deference is accorded, however, when the law has been erroneously declared or applied. *Id.* at 776.

---

**1.** That decree was affirmed after an appeal by Husband to this Court. *See Carter v. Carter,* 862 S.W.2d 461 (Mo.App. S.D.1993).

**2.** All rule references are to Missouri Rules of Civil Procedure (1998).

■ In his first point relied on, Husband contends that the trial court erred in failing to provide him with a credit or set-off against his child support obligation for all payments he made pursuant to the PDL order "which terminated as a result of the retroactive application of the decree of dissolution." He argues that he should receive credit against his child support obligation for $13,000 in temporary maintenance and $4,988 primarily for utilities, both of which he paid pursuant to the PDL order from November 1, 1990, through October 14, 1992, the date of the dissolution decree. He theorizes that because the dissolution decree, which established the amount of child support and awarded no maintenance, was retroactive to November 1, 1990, it superceded and terminated any maintenance or other utility payments ordered under the PDL order. In support, he relies on cases such as *Wakili v. Wakili*, 918 S.W.2d 332 (Mo.App. W.D.1996), which hold that a PDL order terminates and ceases to exist when the decree of dissolution is entered. Essentially, he argues that because the payments under the PDL order were made after the retroactive date of the decree, they were voluntary and should be applied to his child support obligation under the decree.

Contrary to Husband's argument, the dissolution decree was not totally retroactive to November 1, 1990. Instead, the retroactive provision applied only to the child support award. The effective date of the decree as it related to maintenance and other payments was the date it was entered, October 14, 1992. Husband does not, in his point, claim entitlement to credits after that date.

Husband also cites *Roedel v. Roedel*, 788 S.W.2d 788, 791 (Mo.App. E.D.1990), and *Woolsey v. Woolsey*, 904 S.W.2d 95, 98 (Mo.App. E.D.1995). His reliance on these cases is misplaced. In *Roedel*, the appeal was from an award of temporary maintenance and child support which was made retroactive. While the appellate court agreed with the husband's complaint that he should receive credit against the retroactive awards for sums he paid between the time of the separation and the hearing, it was unable to discern how much had been paid for maintenance versus child support or for gifts. It held that the "[h]usband should not be required to make double payments for maintenance and child support," and remanded for a determination of how the monies he had paid should be allocated between those categories. 788 S.W.2d at 791. Here, the appeal is not from the PDL order, the only retroactive award was for child support, and the trial court awarded Husband credit for the amount of child support paid under the PDL order.

In *Woolsey*, the trial court awarded retroactive child support and maintenance. The husband successfully argued that retroactive maintenance was not authorized in a dissolution decree. 904 S.W.2d at 98. He also contended that the trial court had failed to credit him for voluntary payments he made for his child prior to the dissolution. The appellate court held that "[f]ather is entitled to credits against the retroactive award for amounts he paid to and for a child between the time of separation and the time of the hearing." *Id.* (citing *Roedel*, 788 S.W.2d at 791). The court remanded because it was unable to determine how much had been paid for the child versus the mother. *Id.* In the instant case, as indicated above, Husband received credit for the child support paid under the PDL order. He seeks, however, additional credit for the maintenance payments made to Wife, as well as the utility payments "and any other expenditures" on the theory that they were "all paid for purposes of support, all benefiting the family and the children." *Roedel* and *Woolsey* do not support his theory. Therefore, Husband's first point is denied.

■ In his second point, Husband contends that the trial court erred in failing to give him credit for child support payments made directly to Wife and utility payments made after the dissolution decree. He

refers to payments he made from October 26, 1992 (12 days after the decree of dissolution), to December 8, 1993, consisting of $2,430 he paid directly to Wife for child support rather than through the circuit clerk's office, and $1,658 in utility payments. He argues that the child support payments were made directly to Wife due to his "confusion" in that, contrary to the PDL order, the decree required that the child support be paid through the circuit clerk's office rather than directly to Wife. Husband fails to develop the portion of this point concerning utility payments other than a general statement that he made such payments after the decree in the amount of $1,658 "due to his confusion." As a result, he is considered as having abandoned that part of the issue raised in this point. *See Beery v. Beery*, 840 S.W.2d 244, 246 (Mo.App. E.D.1992).

Husband's complaint concerning child support allegedly paid directly to Wife after the decree relates to payments made by check, which recite that they are for "maintenance and support." He argues that "[b]ased upon the misconception and confusion arising out of the status of the obligation of the Court Decree, [he] continued to make payments as required by the PDL Order" rather than through the circuit clerk's office. Husband cites *Weaks v. Weaks*, 821 S.W.2d 503, 506 (Mo. banc 1991), for the premise that entitlement to credit for arrearages in support depends on equitable considerations, and *Grommet v. Grommet*, 714 S.W.2d 747, 751 (Mo.App. E.D.1986), for the proposition that in considering "waiver by acquiescence," the court will look to indicia of injustice such as a change of position induced by a misconception of the other party's intent or the status of the court decreed obligation. He does not, however, develop his theory by citations to the record in support of his contention. While this alone would entitle us to consider the remainder of the point abandoned for failure to comply with the requirements of Rule 84.04, we chose not to do so.

The PDL order required Husband to pay $20 per week for each of the two children. The payments which he now seeks to apply to his child support obligation are evidenced by checks totaling $2,430, each of which recites that it is for "maintenance and support" without any indication of an allocation between the two. At the time of these payments, however, there was no longer an outstanding obligation for maintenance because the decree had been entered which eliminated Husband's duty to make such payments. As said in *Weaks*, entitlement to a credit on arrearages for support depends on equitable considerations. 821 S.W.2d at 506. Here, Husband paid a total of $2,430 which was received by Wife. Although it was improperly paid directly to Wife, and it was incorrectly delineated as including payments for "maintenance" when there was no outstanding obligation to make such payments, the fact is that Wife received and had the use of those monies. Equitable considerations dictate that Husband receive credit on the child support arrearage for the $2,430 paid.

■ In his third point, Husband contends that the trial court erred in not allowing him to take a credit against his child support arrearage for mortgage payments, delinquent taxes, and utility payments he paid after the dissolution decree. He characterizes these expenditures as "in-kind" payments he made to stop the foreclosure of the home in which Wife and the children resided and to provide propane gas for the home.

The general rule is that a non-custodial parent's payments made directly to others for the benefit of the children cannot be credited against a child support obligation, except with the express or implied consent of the custodial parent or where compulsion of circumstances makes it necessary. *Sutton v. Schwartz*, 808 S.W.2d 15, 20 (Mo.App. E.D.1991). In the instant case, Husband claims that a "compulsion of circumstances" entitles him to a credit for these payments. He argues that he "was

confronted with the unenviable option of not making the mortgage payments and paying the delinquent taxes and not paying for utilities, with the result that his children and family would lose their home or be without heat." Among the cases Husband cites in support are *Lieffring v. Lieffring*, 622 S.W.2d 519, 520–21 (Mo. App. W.D.1981), and *Meyer v. Meyer*, 493 S.W.2d 42, 45 (Mo.App.K.C.1973), both of which involved situations where the fathers had actual custody of the children for substantial periods of time and were granted credit for some of the in-kind support provided the children during those times. Factually, that is not the case here.

Here, Husband testified that the marital home, awarded to Wife in the dissolution, was "going up for foreclosure," and because his name was on the note, he satisfied nine past due payments as well as three years of back taxes. He testified that making the past due mortgage payments was the "only manner in which [he] had to get the bank off of [his] and their tails for a period of time." According to his testimony, Husband also paid for propane gas because the supplier told him that his family was out of gas and that they would not deliver more without payment, although he said that he did not verify these facts with Wife. Wife, however, testified that she was not aware that Husband had satisfied delinquent mortgage payments and that the home was, in fact, foreclosed.

■ We give due regard to the trial court's opportunity to judge the credibility of witnesses. Rule 73.01(c)(2). The trial judge may believe or disbelieve all, part, or none of the testimony of any witness. *T.B.G. v. C.A.G.*, 772 S.W.2d 653, 654 (Mo. banc 1989). Furthermore, the trial judge may disbelieve testimony even when uncontradicted. *Anderson v. Anderson*, 869 S.W.2d 289, 291 (Mo.App. S.D.1994). Here, the trial court was not required to believe Husband's testimony on the subject of the payments for which he now seeks credit. We also note that there was substantial evidence that after the decree of dissolution, Husband failed to make all of the support payments he was ordered to make. Furthermore, Wife testified that after the decree was entered, Husband told her that "he would pay the amounts that he wanted, when and where he wanted to." Under these circumstances, we are not convinced that the trial court erred in denying Husband credit on his child support obligation for the payments referred to in this point. This point is denied.

■ In his fourth and final point, Husband contends that the trial court erred in not granting him a credit on his child support obligation in the amount of $4,700, representing the amount Wife allegedly received for the sale of a Kubota tractor which the dissolution court had awarded to him. In support, he cites *Kessinger v. Kessinger*, 829 S.W.2d 658, 662 (Mo.App. E.D.1992), in which the court affirmed the trial court's action in granting a set-off against interest on delinquent child support because it found that the mother had failed to turn over to the father property which he was entitled to following the dissolution.

The argument section of Husband's brief contains no references to the record on appeal supporting his contention that Wife sold the tractor. His statement of facts contains the assertion that Wife sold the tractor, but as support, he refers to a statement he made in the trial court in response to an objection by Wife's attorney.[3] During this objection, he claimed that Wife had sold the tractor after requesting authority from the trial court to do so. He also said that Wife "has testified that she received $4,700 for it." There was no direct evidence, however, that Wife sold the tractor, what money she received for it, or what happened to the money. To the contrary, the legal file indicates that Husband was granted au-

3. Husband appeared *pro se* at trial.

thority to sell the tractor in the PDL order entered on July 18, 1990, with the proceeds to be held in a separate bank account until there was a written agreement with Wife about its withdrawal or until further order of the court. Thereafter, the trial court entered the dissolution decree in which it incorporated a separation agreement which it found was entered into by the parties in October 1990 and provided that Husband was to receive the tractor. Under these facts, we are unable to conclude that the trial court erred in failing to give Husband credit for $4,700 relating to the tractor. This point is denied.

The judgment is reversed to the extent that Husband is to receive credit against the child support arrearage in the amount of $2,430, otherwise the judgment is affirmed. The case is remanded to the trial court for the entry of an amended judgment consistent with this opinion.

SHRUM, P.J. and MONTGOMERY, J., concur.