Ronda Kim SPINABELLA, Respondent

v.

Mark Ethan SPINABELLA, Appellant.

No. SD 29160.

Missouri Court of Appeals,
Southern District,
Division Two.

Aug. 12, 2009.

Susan S. Jensen, Pratt, Fossard, Jensen & Masters, LLC, Springfield, MO, for appellant.

Verna L. Haun, Douglas, Haun & Heidemann, P.C., Bolivar, MO, for respondent.

JOHN E. PARRISH, Judge.

Mark Ethan Spinabella (husband) and Ronda Kim Spinabella (wife) married April 30, 1977. They have two children, both of whom are emancipated. The parties' marriage was dissolved April 8, 2008. Husband appeals claiming the trial court erred in its distribution of marital property and in the amount of maintenance it awarded wife. This court affirms.

Husband asserts four points on appeal. Facts relative to each point are set out in the part of this opinion which is directed to that point.

> When reviewing an appeal of a dissolution of marriage proceeding, "[t]his court will review the judgment of the trial court under the standard of review applicable to any other court-tried case." *Eckhoff v. Eckhoff,* 71 S.W.3d 619, 622 (Mo.App.2002). The judgment will be affirmed unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). This court defers to the trial court's determination of the credibility of witnesses. *David v. David,* 954 S.W.2d 611, 614 (Mo.App.1997). Additionally, "[t]he party challenging the dissolution decree has the burden of demonstrating error." *Taylor [v. Taylor],* 12 S.W.3d [340] at 344 [(Mo.App.2000)].

*Reynolds v. Reynolds,* 109 S.W.3d 258, 267 (Mo.App.2003). Evidence is reviewed in the light most favorable to the trial court's decision. *Id.* at 265.

■ Point I contends that the trial court erred in classifying a residence located in Ozark, Missouri, as marital property and in ordering it distributed as marital property. Husband argues on appeal that the property is not owned by the parties or either of them. The Ozark residence was identified by the trial court as marital property. It was valued at $138,000. The residence was awarded to husband, together with a debt on the home in the amount of $109,643.57 that the trial court found was owed to Ozark Bank.

Husband and wife listed the Ozark, Missouri, residence as marital property on their respective Statements of Marital and Non–Marital Assets and Debts. The evidence was that the parties lived there during their marriage; that they had lived there for approximately 20 years prior to their separation. Husband continued to live in the residence after the separation. He was living there at the time of trial. Husband's expenses included a monthly mortgage payment on the residence of approximately $650; $57.50 a month for insurance; and approximately $1,186 annual property taxes. Husband explained that the present indebtedness was the result of two equity loans that had been obtained to pay credit card bills.

Husband testified that to the best of his knowledge, the Ozark residence is owned by the Spinabella Family Trust. He told the trial court that his brother and mother are trustees. Husband claimed he is not an income beneficiary of the trust; that any benefit he received from the trust, including living in the residence, was at the discretion of his mother. He stated that he would receive a property distribution from the trust only after the death of his mother.

No title document or other evidence relative to the ownership of the residence was presented at trial. The only assertion that the residence was owned by someone other than the parties was husband's testimony that to the best of his knowledge the residence is owned by a family trust.

■ The question of whether the property was marital property is one of credibility. *Ansley v. Ansley,* 15 S.W.3d 28, 35 (Mo.App.2000). This court gives due regard to the trial court's determination of credibility of witnesses. *Vance v. Vance,* 852 S.W.2d 191, 192 (Mo.App.1993). A trial judge may believe all, part, or none of the testimony of any witness. *In re Marriage of Carter,* 4 S.W.3d 562, 567 (Mo.App.1999); *Wright v. Wright,* 975 S.W.2d 212, 215 (Mo.App.1998). *Anderson v. Anderson,* 869 S.W.2d 289, 291 (Mo.App. 1994). A trial judge may disbelieve testimony adduced by a witness even if the testimony is not contradicted. *In re Marriage of Carter, supra; Anderson, supra.* The trial court obviously concluded that husband's testimony regarding ownership of the residence was not credible. Point I is denied.

■ Point II is directed to the trial court including IRA distributions in the amount of $99,456.28 as marital property. Husband claims the money was used to pay living expenses and debts. He contends the trial court's finding that the IRA distributions were marital property and awarding them as such was error "because no evidence was presented that [husband] secreted or squandered the IRA ... that he spent this money on living expenses and debts of the parties during separation."

The trial court found that husband received $99,456.28 in IRA distributions during the parties' separation, but that wife was provided none of those proceeds. It included those funds as martial property

awarded to husband.[1]

The parties separated in October 2005. Their marriage was dissolved in 2008. There was evidence that husband's salary was in excess of $100,000 per year in 2005 and 2006; that it exceeded $150,000 for 2007. The trial court found that husband's monthly gross income from his employment was $12,767.85. It found that in addition to the income he received from his employment, husband received $4,617.90 per month from the IRA distribution that is the subject of Point II; that he received $642.17 per month from "S–corporations averages," $40.00 per month from city council, and $250 per month from gifts from his mother.

■ The trial court found husband's reasonable monthly expenses were $6,032. He had paid wife temporary monthly maintenance of $1,800. Per the trial court's calculation, husband's income during the period of the parties' separation was sufficient to cover his expenses without the use of the unaccounted for IRA funds.

[W]here a spouse secretes or squanders marital property in anticipation of divorce, the court may order reimbursement. *Calia v. Calia*, 624 S.W.2d 870, 872 (Mo.App. W.D.1981). A trial court does not have to specifically find that it believes monies have been secreted or squandered in anticipation of divorce, because its actions can imply such a conclusion where sufficient evidence ex-

ists to support the conclusion. *McGowan [v. McGowan]*, 43 S.W.3d [857] at 866 [(Mo.App.2001)]. The court is free to disbelieve a witness' testimony or vague accounting that [the witness] used expended money for living expenses. *Schneider v. Schneider*, 824 S.W.2d 942, 947 (Mo.App. E.D.1992).

*Loomis v. Loomis*, 158 S.W.3d 787, 791 (Mo.App.2005).

■ The evidence before the trial court did not explain with any particularity in what manner husband used the IRA distributions. He offered no evidence that identified living expenses or debts for which the funds were used. The fact that husband's income during the separation was more than adequate to meet his living expenses dispels his claim that the IRA funds were needed for the purposes he now says they were used. The trial court was in the position to judge the credibility of the testimony it heard and is afforded broad discretion in determining issues relating to whether assets were squandered by a party. *Heslop v. Heslop*, 967 S.W.2d 249, 255 (Mo.App.1998). A court may order reimbursement of marital assets it determines a spouse has squandered in anticipation of dissolution of the party's marriage. *Judy v. Judy*, 998 S.W.2d 45, 52 (Mo.App.1999). The trial court's inclusion of the amount of the IRA distributions as marital property awarded husband is equivalent to an order that the funds be refunded. This

---

1. The trial court also included as marital property distributed to husband the sum of $17,444.10 that it listed as "Monies Squandered by Husband during separation." Evidence was presented that the funds were spent as follows: flight for son Cory and friends to Las Vegas, $879.16; taxes paid for Debbie Rusher, $520.72; insufficient funds service charges, $2,292.00; monies paid directly to Debbie Rusher, $8,091.01; travel expenses for trips with Debbie Rusher, $1.393.52; gifts purchased for Debbie Rusher, $1,131.00; expenses paid for Debbie Rusher, $1,000 per month; monies paid for wedding of Debbie Rusher's daughter, $642.69; monies paid to Stacy (Rusher) Thompson, $1,029.00; monies paid to Todd Thompson, $465.00.

court finds no abuse of discretion by the trial court. Point II is denied.

■ Point III assigns error to the trial court's division of marital property. Wife was awarded marital property valued at $202,437.20. Husband was awarded marital assets valued at $319,950.04.[2] He was allocated marital debts of $260,045.91.[3] Husband, therefore, received net marital assets of $59,904.13.

The trial court identified the assets and debts allocated as marital property on a schedule entitled "Division of Property" that is an exhibit to its decree. The division of property schedule states that the value of marital property awarded husband was $161,770.00. In arriving at that figure, the trial court included as a marital asset awarded husband the amount of the IRA distributions husband received during the parties' separation and which were discussed in the determination of Point II, *supra*. The trial court also included as a martial asset awarded husband, monies it described as being "monies squandered," *see* n. 1, *supra*. The effect of including these amounts in the schedule was to add $99,456.28, representing the IRA distributions, and $17,444.10, the amount referred to in n. 1, *supra,* to the value of net marital assets awarded husband. The trial court also deducted, as a marital debt assigned to husband, $15,034.51 for the attorney fees awarded wife.

The net figure the division of property schedule shows to have been allocated to husband was $161,770 as itemized below.

2. This includes $138,000 as the value of the Ozark residence.

3. This includes the debt on the Ozark residence in the amount of $109,643.57.

4. Wife did not work outside the home during the majority of the time the parties were mar-

| | |
|---|---:|
| Value of marital assets awarded husband | $319,950.04 |
| Marital debt | (260,045.91) |
| IRA distributions received by husband | 99,456.28 |
| Amount trial court discussed as "squandered," (see n. 1, **supra**) | 17,444.10 |
| Wife's attorney fees | (15,034.51) |
| Total on Division of Property schedule | $161,770.00 |

Upon a review of the whole record, considering the lack of specificity husband provided in identifying the assets under his control during the parties' separation and their use, this court does not find that the trial court abused its discretion in its distribution of marital property. Husband's Point III, as this court understands it, complains, without any degree of specificity, only that husband's economic circumstances are such that he "cannot pay all the debt and [wife] can pay some." There is no showing that the trial court failed to consider all relevant factors in distributing marital property. *See* § 452.330.1. Point III is denied.

■ Husband's Point IV argues that the trial court erred in awarding wife maintenance in the amount of $2,500 per month; that the amount is more than she reasonably needs and the trial court did not consider the amounts wife receives or could receive "on the property awarded to her."

Wife had not been employed for over twenty years.[4] Her only income during the period of separation was temporary maintenance in the amount of $1,800 per month. Husband's earning capacity was

ried. She contributed to the marriage as homemaker and primary caretaker of the parties' children. She cared for husband's mother as needed. She assisted husband in entertaining clients during cruises, trips, and on other social occasions.

far greater than wife's. Wife was 51–years old at the time of trial. She suffers from a borderline personality disorder and severe bi-polar disorder that result in periods of anxiety, depression, and mood swings.

The trial court found wife's reasonable needs to be $2,958.96 per month. It found wife capable of being employed at minimum wage. The trial court may have considered that wife's physical condition limited her ability to work full-time even at a minimum wage job.

 Husband argues that wife was awarded various IRA investment accounts, a life insurance policy, and a 401k account; that the trial court failed to consider these income-producing assets in its award of maintenance. The assets wife was awarded, and which husband argues should be used to provide for her support, consist primarily of tax deferred assets. There would be tax penalties imposed if wife were required to use those funds, including any income they may earn, prior to wife reaching retirement age. The trial court did not impose the requirement that wife make early withdrawals from those accounts in order to provide for her current support. This court finds no abuse of discretion on the part of the trial court. A spouse is not required to deplete his or her share of marital assets before maintenance can be awarded. *Tarneja v. Tarneja*, 164 S.W.3d 555, 565 (Mo.App.2005). Point IV is denied. The judgment is affirmed.

BURRELL, P.J., and RAHMEYER, J., concur.