LUCILLE SMITH, Dependent, Appellant, v. MILLIE SMITH, Dependent, Respondent, and MISSOURI PORTLAND CEMENT COMPANY, Employer, Respondent, No. 42200—237 S. W. (2d) 84.

Division One, March 12, 1951.

895

*George E. Messing* and *Thomas L. Sullivan* for appellant.

896

*Irwin White* and *Courtney S. Goodman* for respondent Millie Smith; *White, White & White* of counsel.

897

*Luke, Cunliff & Wilson* for respondent Missouri Portland Cement Company.

[86] VAN OSDOL, C.—This is a workmen's compensation case. The employer has conceded that Charles Smith, employee, sustained an accident arising out of and in the course of his employment, resulting in his death the same day, October 26, 1948, and that his dependent widow is entitled to death benefits, $8886, under the Workmen's Compensation Law, Chapter 287, R. S. 1949, Sections 287.010 et seq. The sole controversy is—which of two claimants, respondent Millie Smith or appellant Lucille Smith, is the dependent widow of the deceased employee.

The hearing was before one of the referees of the Commission. The referee found that claimant-appellant Lucille Smith was not the lawful wife of the employee at the time of his death, and that "said deceased employee left surviving him, Millie Smith, his lawful wife, who was his total dependent." Upon review by the full Commission, it was found that claimant-respondent Millie was the lawful wife of the employee at the time of his death, and it was further found that claimant-appellant Lucille had "failed to prove that she was the lawful wife of the now-deceased employee at the time of his death." The ensuing award to respondent Millie was affirmed upon appeal to the Circuit Court.

As we understand this case, it was not and it is not seriously contended that claimant-respondent Millie was not, at least at one time, the lawful wife of the employee. The first marriage to Millie having been established or admitted, the problems of the Commission were to determine whether or not claimant-appellant Lucille was subsequently married to the employee [87] in accordance with the law of the state where the subsequent marriage was contracted; and, if so, was there evidence sufficient to rebut the consequent presumption of the validity of the subsequent marriage.

Appellant Lucille complains that competent and material evidence tending to show her marriage to Charles was excluded by the Commission's referee; and, perforce, such evidence was not considered by the referee and by the full Commission upon review of the referee's finding. We have examined the transcript of the record, and we are of the opinion competent and material evidence was rejected which the referee and the Commission should have received and considered, and we believe the findings and award should be set aside and the cause remanded with directions that the evidence erroneously excluded be admitted, and considered and weighed by the Commission in connection with the other competent and material evidence introduced, although we definitely do not presume to say the Commission's award upon rehearing should or should not be a different one.

The claimant parties, appellant and respondent, had the right to introduce competent and material evidence in support of their claims, and it was the referee's and the Commission's duty to receive, consider and weigh all of the competent and material evidence offered.

The referee and the Commission may not reject competent and material evidence offered by either party. Wills v. Berberich's Delivery Co., 339 Mo. 856, 98 S. W. 2d 569, id., 345 Mo. 616, 134 S. W. 2d 125.

In endeavoring to demonstrate our view of the competency and materiality of the evidence excluded, we find it necessary to give a general summary of the evidence introduced.

Claimant-respondent Millie Smith (formerly Millie Thomas) testified of her marriage to Charles Smith at her brother's home in Birmingham, Alabama. She introduced a certified copy of the record of a marriage license and certificate of solemnization of marriage dated January 10, 1920, of Charlie Smith, age 23, and Millie Thomas, age 22. Millie lived with him seven years. He left her without cause. She had never given a thought to divorce; she and Charles had never talked of a divorce; and she had not been served with any "papers of any court." During the years 1927 to 1947, Charles returned to her eighteen times and lived with her. When he returned, he sometimes stayed one or two months. The last time he returned was at Christmas time, 1947; he stayed about a month "off and on." In August 1948, he sent her some money—cash enclosed in a letter. When he would go on these trips away from her he would go to Anniston, Alabama, "that was his home." He stayed in Arkansas for a while. He wrote her once in a while, about once a year. The letters were from Arkansas; the last was from Missouri. In 1936 or 1937, he was away "about two or three years." She never learned he was living with anyone else, "just thought he was roaming, didn't know exactly." She had never heard of claimant-appellant Lucille until after the death of Charles. She always knew where Charles was. She is a first cousin of Lulu Smith, who is the wife of James Smith, uncle of Charles. The uncle, James, reared Charles. Her homt is 75 or 100 yards from the home of James and Lulu in Birmingham. James Smith informed her of the death of Charles. She did not go to St. Louis until after the funeral. She was "sick from shock" at the time.

Respondent Millie introduced evidence tending to negative the issuance of a marriage license to Charles Smith and Lucille (Long) in any county in Arkansas between the years 1929 and 1935. Respondent Millie introduced evidence tending to negative the record of any decree of divorce of Charles and Millie Smith in the courts of the Tenth Judicial Circuit of Alabama or of Eighth Judicial Circuit of Missouri, or in the Circuit Courts of Crittenden, Lee and St. Francis Counties, Arkansas. Respondent Millie also introduced the Statutes of the State of Arkansas requiring the obtention of a license to marry; the return of the license officially signed as having been executed by the celebrant [88] solemnizing and who was authorized to solemnize and his certificate and statements of solemnization and the place of the recordation of the credentials of his authority to solemnize the

marriage; the recording of the license and the recording upon required return of the license officially signed as having been executed; and the certificate of the record of marriage and the return of the certificate, together with the marriage license signed as having been executed, to the person presenting the latter. Sections 55-201, 55-216, 55-218, 55-219, 55-226, Arkansas Statutes Annotated, Official Edition, 1947.

Claimant-appellant, Lucille Smith (formerly Lucille Long), lives on North Market Street, St. Louis, having lived at the same address since 1944. Lucille testified that she met Charles Smith in Marianna, Arkansas, in 1932. She was then seventeen years of age. She was working in Marianna, and Charles was working on a farm. Their friendship grew, Charles proposed marriage, and was accepted; and there was a ceremony performed (purportedly) by a minister, Reverend Griffin. The minister "asked me if I would take this man to be my lawful wedded husband, and I told him I did." The minister asked Charles if "he took this woman to be his lawful wedded wife. * * * He told him he would." The ceremony was at her sister's house. This was down on "Mr. Dade Graves' farm," a plantation. She did not get the license. "Women don't do that down there." Charles got the license and the minister. She doesn't know "where he got them from." Charles told her the minister's name. She did not look at the paper "Charlie went and got"; but she signed it. It looked like a marriage certificate. Charles gave it to the minister. She believes a marriage license and a marriage certificate "are both the same." Lucille went home with Charles to a boarding house on the farm. That is "where he carried me to, Mr. John G. Claybrooke's on the farm"; and they lived continuously as man and wife until the death of Charles, October 26, 1948. They lived in Arkansas until they went to Alabama in 1943, where Charles worked in a coal mine at Birmingham until May 1944, at which time they moved to St. Louis where they have lived together constantly at the Market Street address. They had been away from St. Louis only on one week end. This was on a trip to Chicago to visit John Shelby, uncle of Charles. Lucille lived in Birmingham as "Charlie Smith's wife." They often visited the home of James and Lulu Smith. Charles introduced her to his uncles at Birmingham and Chicago as his wife. While in Birmingham, Lucille "never once heard of Millie Smith." In St. Louis, Charles opened store accounts for her as his wife. Lucille saw Mildred Mitchell, daughter of James and Lulu Smith, at the funeral.

Mildred (cousin of Millie), thirty-two years old at the time of the hearing, April 20, 1949, testified she had last seen Charles in 1934. She saw him at his home and at the home of her parents. She had recognized the body of Charles Smith, deceased employee, as that of Charles Smith whom she had known as the husband of Millie.

Appellant Lucille offered into evidence "Exhibit A," a carbon copy of a federal income tax return for the year 1946. Lucille identi-

fied the signature thereto as that of the employee Charles Smith. The exhibit was excluded on the grounds it was a carbon copy, not the best evidence, and the filled-out portion, naming Lucille as the wife of Charles, and the signature were obviously by "two different persons." Appellent Lucille offered "Exhibit B," a telegram dated October 30, 1948, purportedly from John Shelby (uncle of Charles), conveying the message, "My deepest sympathy on the loss of your husband." "Exhibit B" was excluded on the ground it was not identified. Appellant Lucille offered "Exhibit C," an application for employment with respondent employer. The exhibit was produced from the files of the employer. The application, signed by Charles, was dated October 26, 1946. In the application Lucille is named as the applicant's wife and dependent. "Exhibit C" was excluded "for the reason that it does not tend to prove or disprove a marriage." Appellant Lucille was also asked if she had received insurance benefits upon [89] the death of Charles. An objection by respondent Millie was interposed and sustained by the referee on the ground insurance benefits from any source have "no bearing on the issues in this case."

Lucille had the burden of showing she was lawfully married to Charles. As we have said, the Commission found that Lucille had failed to prove she was lawfully married to Charles. Undeniably the Commission passes upon the credibility of the witnesses and may decide a claim solely upon the finding of lack of credibility of uncontradicted and unimpeached testimony offered in support of a claim. Scott v. Wheelock Bros., 357 Mo. 480, 209 S. W. 2d 149. We cannot know that the finding of the Commission was based upon the disbelief of Lucille's testimony; but, if Lucille's testimony were believed, she established, prima facie, her marriage to Charles, not by documentary evidence, but by direct verbal testimony tending to show a ceremonial marriage. It is true Lucille did not introduce into evidence a marriage license and certificate authorizing and certifying her marriage to Charles; it is true the law of Arkansas requires the issuance of a marriage license and the certificate of the performance of the marriage pursuant to the license issued; and it is also true Lucille was required to prove her marriage to Charles in accordance with the law of Arkansas, the State in which she asserts her marriage was contracted. But we here say, if the Commission were to believe the testimony of Lucille in tending to show a ceremonial marriage to Charles, the evidence introduced by Lucille was substantial in tending to establish her marriage to Charles in compliance with the law of Arkansas.

The Supreme Court of Arkansas has said the Arkansas statutes prescribing the manner and form in which marriages may be solemnized are "mandatory and not directory merely. In short, we hold that the doctrine of so-called 'common-law marriages' has never obtained or become a part of the laws of this state." Furth v. Furth, 97 Ark.

272, 133 S. W. 1037; Martin v. Martin, 212 Ark. 204, 205 S. W. 2d 189. But the Supreme Court of Arkansas recognizes, as do we, that a marriage may be proved by evidence other than a marriage license and certificate. Martin v. Martin, supra; Thomas v. Thomas, 150 Ark. 43, 233 S. W. 808; Farmer v. Towers, 106 Ark. 123, 152 S. W. 993; Jones v. Jones, 28 Ark. 19; Hartman v. Valier & Spies Milling Co., 356 Mo. 424, 202 S. W. 2d 1; Suddeth v. Hawkins, Mo. App., 202 S. W. 2d 572; Thomson v. Thomson, 236 Mo. App. 1223, 163 S. W. 2d 792. The Arkansas statutes do not change the rules of evidence by which marriage may be proved. Thomas v. Thomas, supra. And we note that appellant Lucille was undertaking to show a *ceremonial* marriage solemnized in compliance with Arkansas law, not a "so-called 'common-law marriage.'"

Parol evidence is admissible in proof of marriage. The general rule is that a ceremonial marriage may be proved by the testimony of eye witnesses who can identify the parties, without the production of a marriage certificate and without an explanation of its absence, and the testimony of either of the parties is, ordinarily, admissible to prove marriage. Vol. 35, Am. Jur., Marriage, §§ 209, 210, pp. 317-318; and examine Hartman v. Valier & Spies Milling Co., supra. We have noticed Lucille testified, in effect, that she and Charles had formally and publicly consented in entering into marriage purportedly solemnized by a minister. The marriage was seemingly authorized by a paper which "looked like a marriage certificate," which paper Lucille signed and Charles handed to the minister. Charles and Lucille thereafter consorted as man and wife. It has been written that, where "a *ceremonial marriage* is essential, the performance of the ceremony with the appearances of validity may create a presumption as to the lawfulness of the form, the authority of the celebrant, the issuance of a license, and the like; although here much may turn on the circumstances of each case and the additional evidence offered or available." Vol. IX, Wigmore on Evidence, [90] 3d Ed., § 2505, pp. 369-370; and see again Hartman v. Valier & Spies Milling Co., supra.

Evidence was excluded by the referee which was competent in tending to corroborate Lucille's testimony of the marriage and tending to sustain the presumption that a marriage had been lawfully contracted. The signed application for employment, "Exhibit C," mentioned supra, was clearly admissible as a declaration by Charles that Lucille was his wife. Respondent Millie contends any erroneous ruling in excluding the exhibit was not preserved because there was no offer of proof of the exhibit after it was excluded by the referee's ruling. In order to preserve error in the exclusion of a document offered into evidence, it was not necessary to make an additional formal proffer of proof of what the exhibit would have shown if it had been admitted. The offer of the document itself was the proffer

of its contents. Counsel for appellant Lucille plainly stated his purpose in making the offer. Counsel stated to the referee the exhibit was admissible as evidence "that Charles Smith held himself out as a married man and that he was married to Lucille Smith, and that Lucille Smith was his wife." (It is noted the applicant Charles stated his age as 39 years in his application for employment, "Exhibit C," dated October 26, 1946, whereas, his age is stated as 23 years in the license and certificate of marriage to Millie, dated January 10, 1920.)

It could hardly be soundly said the fact, if so, that Lucille was designated by Charles as his wife and beneficiary of his insurance would have "no bearing on the issues in this case." See Hartman v. Valier & Spies Milling Co., supra. Likewise, if Charles, in his income tax return, showed Lucille as his wife, the fact would be competent in tending to show marriage. If John Shelby, learning of the death of his nephew Charles, sent a telegram to Lucille expressing his condolences upon the death of her husband, the telegram might be admissible if authenticated and if the circumstances satisfied the rule allowing hearsay evidence to prove pedigree. Faggard v. Filipowich, 248 Ala. 182, 27 So. 2d 10; 31 C. J. S., Evidence, § 230, p. 979. It is true the three items of proof mentioned in this paragraph were not properly developed, and the referee may have been technically correct in rejecting the offers as made. But if, upon further hearing, these elements of proof are offered in the form of authenticated documents or copies of documents or otherwise in accord with the law of evidence, it would be right and just for the Commission to receive and consider such evidence, together with any other competent and material evidence the claimants might then desire to offer.

Should the Commission upon rehearing, having examined and weighed all of the competent and material evidence introduced tending to prove and to negative a marriage of Charles and Lucille, determine that the marriage was solemnized in form in accordance with the requirements of the law of Arkansas, then all of the presumptions of the validity of marriage would be shifted to the support of the validity of the second marriage—the established marriage of Charles and Lucille would be presumptively valid. The presumption of innocence would surmount the presumption of the validity and continued existence of the former marriage. It would be presumed there were no legal impediments in the way of the lawful matrimonial relations of the parties to the last marriage, that is, in this case it would be presumed the former marriage of Charles and Millie had been dissolved by divorce. It would seem it would then be the responsibility of the Commission to determine whether the competent and material evidence tending to negative a divorce is sufficient in rebutting the presumption of the validity of the last marriage. The presumption of the validity of the last marriage may be repelled only

by the most cogent and satisfactory evidence. Johnson v. St. Joseph Terminal R. Co., 203 Mo. 381, 101 S. W. 641; Maier v. Brock, 222 Mo. 74, 120 S. W. 1167; Nelson v. Jones, 245 Mo. 579, 151 S. W. 80. Osmak v. American Car & Foundry Co., 328 Mo. 159, 40 S. W. 2d. 714; Suddeth [91] v. Hawkins, supra. Thomson v. Thomson, supra; De Ra Luis v. Carter Carburetor Co., Mo. App., 94 S. W. 2d 1130. And see Carr v. Carr, Mo. Sup., 232 S. W. 2d 488, and other cases therein cited.

The judgment affirming the Commission's award should be reversed; the award should be set aside, and the cause should be remanded to the Commission for further hearing.

It is so ordered. *Lozier* and *Aschemeyer, CC.,* concur.

PER CURIAM:—The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court. All the judges concur.