Sondra Jean JAMES, Respondent,

v.

Jack J. JAMES, Appellant.

No. 23360.

Missouri Court of Appeals,
Southern District,
Division One.

March 12, 2001.

Motion for Rehearing or to Transfer to
Supreme Court Denied May 1, 2001.

Application for Transfer Denied
June 26, 2001.

Richard L. Schnake, Andrew J. Hager, Jr., for Appellant.

Robert S. Wiley, for Respondent.

PARRISH, Justice.

Jack J. James (husband) appeals the judgment in an action for dissolution of marriage brought by Sondra Jean James (wife). Husband contends the trial court erred in finding that the parties had entered into a valid marriage; that, therefore, the trial court had no jurisdiction to enter judgment.

Wife filed a petition for dissolution of marriage in the Circuit Court of Stone County, Missouri, alleging that she and husband were married on or about December 28, 1980, in Matamoros, Mexico. The petition sought judgment dissolving the marriage, setting aside the separate property of the respective parties and distributing marital property. It requested the

trial court to award wife reasonable attorney fees and to allocate marital debts. It sought restoration of wife's former married name. Husband's answer denied that the parties were married and requested that the petition be dismissed.

The trial court found that the parties were married; that they cohabited as husband and wife and held themselves out as husband and wife from December 28, 1980, until they separated in the summer of 1996. It found there was no reasonable likelihood that the marriage could be preserved, that the marriage was irretrievably broken, and ordered the marriage dissolved. The trial court made no determination of the other issues presented in wife's petition ordering "that the issues of property division and allocation of debts will be set for hearing upon the request of either party."

### Wife's Motion to Dismiss Appeal

■ Wife filed a motion to dismiss this appeal on the basis that the judgment was "not a final, appealable judgment, ... that it [did] not dispose of all the issues in the action." Wife's motion would be well taken in view of Rule 74.01(b) but for § 452.360.1, RSMo Cum.Supp.1999, that states:

> A judgment of dissolution of marriage or of legal separation is final when entered, subject to the right of appeal. An appeal from a judgment of dissolution that does not challenge the finding that the marriage is irretrievably broken does not delay the finality of that provision of the judgment which dissolves the marriage beyond the time for appealing from that provision, so that either of the parties may remarry pending appeal.

This issue was addressed by the Western District of this court in *Dunafon v. Dunafon,* 800 S.W.2d 483 (Mo.App.1990). In *Dunafon,* the trial court entered judgment dissolving the marriage but provided, "All other matters, including child custody and support, maintenance, and division of property and debts, are taken under advisement pending further hearing of this court." *Id.* at 484. A motion for new trial was filed. The trial court entered an order purporting to grant the motion more than 90 days after it was filed. The order was appealed. The issue on appeal was whether the trial court's judgment was interlocutory because not all issues in the case had been determined. If the judgment were interlocutory, the trial court would have had jurisdiction until such time as all issues were determined and, hence, the order granting a new trial would have been proper. If not, the trial court would have lost jurisdiction upon expiration of 90 days next following the filing of the motion for new trial. *See* Rule 78.06.[1]

*Dunafon* held the judgment granting the dissolution was final when entered, explaining:

> If the decree of dissolution was interlocutory when entered, and would not become final because there remained other issues to be disposed of, then the court retained jurisdiction of the decree purporting to dissolve the marriage and did not lose power to set the same aside when the 90 days passed after the filing of wife's "Motion to Vacate Order or for New Trial." *See Joy v. Safeway Stores, Inc.,* 755 S.W.2d 13, 14 (Mo.App.1988); *Thompson v. Hodge,* 348 S.W.2d 11, 13 (Mo.App.1961).

The decree of dissolution, however, was not interlocutory, and became final on August 13, 1990, when wife's "Motion

---

1. Although the language of Rule 78.06 was amended in 1995 and 1999, the changes did not affect the substance of the rule as it existed at the time *Dunafon* was decided.

to Vacate or for New Trial" was overruled by operation of law 90 days after filing. Supreme Court Rule 78.06; *State ex rel. Division of Family Services v. Duncan,* 782 S.W.2d 457, 461 (Mo.App.1990); *Southwestern Bell Telephone Co. v. Buie,* 758 S.W.2d 157, 162–63 (Mo.App.1988). Cases of [the Western] [D]istrict hold on the basis of § 452.360.1, RSMo 1986,[2] that the judgment of marriage dissolution is separate from the judgment disposing of the other issues of the dissolution case, such as child custody and support, maintenance, and division of property and debts. *Fischer v. Seibel,* 733 S.W.2d 469, 471–73 (Mo.App.1987); *In re Marriage of Jamison,* 592 S.W.2d 181, 183–84 (Mo.App.1979); *Fields v. Fields,* 584 S.W.2d 163 (Mo.App.1979); *State ex rel. Horridge v. Pratt,* 563 S.W.2d 168, 170–71 (Mo.App.1978).

800 S.W.2d at 484.

This court agrees with the Western District's declarations in *Dunafon.* Wife's Motion to Dismiss Appeal is denied.

### Husband's Appeal

 Husband asserts one point on appeal. He contends the trial court erred in finding the parties were married in Matamoros, Mexico, because as a matter of law, no marriage existed in Mexico and, therefore, could not exist in Missouri. Husband asserts that the parties did not comply with requirements of Mexican law requisite for a valid marriage. He argues that even based on wife's testimony, there was no basis for the trial court's finding that the parties were married.

Husband and wife began living together in 1979. Wife's son from a prior marriage and husband's son from a prior marriage

lived with them. In December 1980, husband, wife and the two boys went to Mexico. On December 27 they were at the border town of Matamoros where they saw a wedding chapel. The next day husband asked wife if she would marry him. She told him, "Probably." Wife told the trial court she wondered how long it would take; that they "checked it out to see." They decided to get married.

The chapel was a little room with a desk. A man there performed the marriage. Wife explained, "He spoke very broken English. You couldn't hardly understand him. It lasted just a few minutes." She was asked the following questions and gave the following answers:

Q. Did you take vows, though—

A. Yes.

Q. —saying that you agreed to marry each other?

A. We—Yes.

Q. That much you could understand?

A. Yes.

Q. And it was very brief, you say?

A. Very brief.

Q. Did you have to sign any papers?

A. Yes, sir.

Q. What did you sign?

A. Signed a certificate.

Q. And did anybody else sign?

A. Yes, sir. There were—The gentleman got two ladies. He went outside and got two ladies, and she [sic] came in and signed along with him.

Q. The two ladies?

A. Yes.

Q. And did you and Jack sign?

A. Yes, sir.

**2.** The substance of § 452.360, RSMo Cum. Supp.1999, was unchanged from the 1986 revision of the statute.

Q. And did the gentleman who performed the marriage sign?

A. Yes, sir.

Wife testified that she and husband also signed a large book at the chapel.

Husband paid the man who performed the service ten dollars. They were given a certificate that had the word "matrimony" at the top. They could not read the rest of it. Later, on their return trip through Texas, they had an argument over missing a turn-off from the road they were traveling. Husband pulled over at a bar. Husband went inside, leaving wife and the boys in the car. Wife and the boys waited for more than an hour for him to come out. Wife finally went inside to talk to him. She told the trial court, "And he was still mad. He told me there wasn't any marriage, that he had torn up the certificate."

After their return from Mexico, husband told wife he did not want anyone to know they were married. He did not want his ex-wife or his children to find out. Wife began using "James" as her last name, however, and told her son and her sister about the marriage. Husband and wife told their attorney about the marriage. Thereafter, the attorney dealt with them as husband and wife in legal matters.

Husband referred to wife as "his wife" in social settings. Friends introduced them as husband and wife. They filed joint income tax returns from 1980 to 1990. They operated businesses together and had a joint checking account as "Jack or Sandy James."

Requirements of Mexican law were not addressed during the course of the trial. At the conclusion of wife's rebuttal evidence, the trial judge inquired, "All rest?" One of husband's trial attorneys advised the trial court that he and wife's attorney wanted a conference to "decide how we're going to keep this record open and that

kind of thing." The trial court acceded. Husband's trial attorney added, "But we don't need to be on the record." The trial transcript ends with that statement. It includes no explanation of the purpose of the request to "keep this record open."

However, a docket entry on the last day of trial, May 14, 1999, notes that the parties rested then adds, "Court at request of counsel will allow record to remain open until 6/11/99 for Mexican Law." A docket entry dated "6–25–99" extended time "for counsel to provide Mexican law until July 9." The docket sheet reflects an entry dated "8–13–99" that states, "[Wife] files Exhibit 29 pertaining to Mexican Law and [wife's] brief filed." An "8–16–99" docket entry states, "[Husband's] Suggestions in Support of [Husband's] Motion to Dismiss filed." On "10–14–99" the trial court declared the cause was "taken from advisement after reviewing legal briefs filed by attorneys for both parties." The trial court entered "findings of fact" that included, "[Wife] and [husband] were married to each other on or about December 28, 1980 in Matamoros, Mexico." Judgment was entered October 29, 1999, dissolving the marriage.

The materials the parties filed with respect to "Mexican Law" are included in the legal file component of the record on appeal. They include copies of certain Mexican statutes filed by husband, together with what are represented as translations by a person identified as a "Federally Certified Court Interpreter." Wife filed an affidavit of a person identifying himself as "an attorney licensed to practice in the Republic of Mexico." The affidavit of the attorney represents that an attachment to the affidavit "is a photocopy of the laws of Mexico regarding marriage." The affidavit purports to summarize what is required for a marriage under Mexican law. It states, "Basically, a valid marriage may be

contracted in Mexico with a simple exchange of vows before the proper civil official or authority."

The material filed by husband also includes an affidavit of an individual who represents himself as "an attorney with a legal practice in the city of H. Matamoros, Tamaulipas, Mexico." It states requirements that the affiant contends would have been required in 1980 in order for there to have been a valid Mexican marriage. The stated requirements differ from the requirements claimed in the affidavit filed on behalf of wife.

The trial court made no declaration with respect to requirements of Mexican law. It concluded, however, that the parties "made a simple declaration or promise of marriage at a place which performed marriages in Matamoros, Mexico, on or about December 28, 1980." It held the parties were married in Matamoros, Mexico, on that date; that they participated in a marriage ceremony there and, thereafter, "cohabited as husband and wife and held themselves out as husband and wife ... until their separation in the summer of 1996." The trial court found the marriage was irretrievably broken. It ordered the marriage dissolved.

Husband's claim of trial court error is based on the principle of Missouri law that the validity of a marriage is determined substantively, though not procedurally, by the law of the place where it was contracted. *See Yun v. Yun,* 908 S.W.2d 787, 789 (Mo.App.1995). He contends the marriage ceremony in Mexico did not comply with Mexican law; that, therefore, there was no valid marriage.

■ Missouri has adopted "The Uniform Judicial Notice of Foreign Law Act" as §§ 490.070 to 490.120.[3] It requires the courts of this state to "take judicial notice of the common law and statutes of every state, territory and other jurisdiction *of the United States* ." § 490.080 (emphasis added). That requirement does not extend to laws of other nations. § 490.120. Whether to recognize the law of another country is a matter of comity. "[T]he doctrine of comity is a rule of voluntary consent." *In re S.M.,* 938 S.W.2d 910, 919 (Mo.App. 1997). "[I]t has been defined as a courtesy or a willingness to grant a privilege, not as a matter of right but out of deference, respect, and good will." *Id.*

Here, the trial court had before it different assertions about what was required to create a valid marriage under Mexican law. The information provided the trial court was not compelling.

As suggested in *Noell v. Chicago & E.I. Ry. Co.,* 21 S.W.2d 937 (Mo.App.1929), in circumstances such as these, Missouri courts need not throw their collective hands up in helplessness and say they are without law necessary to determine the case. *Id.* at 942. They may apply their own state's law. *Id.*

■ The testimony of a party is admissible to prove marriage. *Smith v. Smith,* 361 Mo. 894, 237 S.W.2d 84, 89 (1951). Wife testified that she and husband participated in a ceremonial marriage. "[W]here 'a *ceremonial marriage* is essential, the performance of the ceremony with the appearances of validity may create a presumption as to the lawfulness of the form, the authority of the celebrant, the issuance of a license, and the like.' " 237 S.W.2d at 89, quoting Vol. IX, Wigmore on Evidence, 3d Ed., § 2505, pp. 369–70.

In *Suddeth v. Hawkins,* 202 S.W.2d 572, 575 (Mo.App.1947), the court held it was permissible to presume a legal marriage

---

**3.** References to statutes are to RSMo 1994 unless stated otherwise.

that conformed to statutory requirements based on the parties' actions and conduct. In so holding, *Suddeth* quoted at length from, and relied on, *Thomson v. Thomson*, 236 Mo.App. 1223, 163 S.W.2d 792, 796 (1942), as follows:

" '[T]he fact of marriage may be proved either by direct evidence or by circumstantial or presumptive evidence, and either by documentary evidence or by parol, and the sufficiency of the evidence to establish a marriage is governed by the general rules of evidence.' " 38 C.J. pages 1330, 1331.

" 'Independent of any direct or documentary evidence, a marriage may be circumstantially established by the fact that a man and woman have for a considerable period of time openly cohabited as husband and wife and recognized and treated each other as such, so that they are generally reputed to be married among those who have come in contact with them. Such circumstances justify a finding that at the commencement of the cohabitation the parties actually entered into a marriage; * * * ' " 38 C.J. page 1337.

. . .

" 'If a marriage in fact is established by evidence or admission, it is presumed to be regular and valid, and the burden of adducing evidence to the contrary rests on the party who attacks it, even though it involves the proving of a negative.' " 38 C.J. 1325, 1326.

" ' * * * where man and woman are living together as husband and wife, marriage should always be presumed. * * * A marriage which is once shown is presumed to have been in compliance with legal requirements as to its celebration.' 35 Am.Jur. pages 303, 305."

202 S.W.2d at 576. *See also Forbis v. Forbis*, 274 S.W.2d 800, 806 (Mo.App. 1955).

The trial court found that husband's and wife's Mexican marriage was valid; that it, therefore, had jurisdiction over the relationship of the parties. That determination was supported by the evidence. It was not against the weight of the evidence. It did not erroneously declare or apply the law. Husband's claim of error is denied. The judgment is affirmed.

SHRUM and MONTGOMERY, JJ., concur.