**In re the MARRIAGE OF Sondra Jean JAMES and Jack J. James.**

**Sondra Jean James, Petitioner–Respondent,**

**v.**

**Jack J. James, Respondent–Appellant.**

**No. SD 29958.**

Missouri Court of Appeals, Southern District, Division Two.

Aug. 13, 2010.

Richard L. Schnake, Neale & Newman, L.L.P., Springfield, MO, for Appellant.

Christopher J. Swatosh, Ava, MO, for Respondent.

GARY W. LYNCH, Presiding Judge.

Jack J. James ("Husband") appeals the trial court's judgment dividing the marital property from his marriage with Sondra Jean James ("Wife"). The trial court found that J & K Land Company, Inc. ("J & K"), although not owned by Husband or Wife, had previously held marital property for them, and that Husband squandered, fraudulently hid, and fraudulently conveyed over $2,660,000.00 in marital property, including that held by J & K. Husband argues on appeal that the trial court erred in awarding him the marital property, if any, held by J & K and the interest, if any, in the real estate he transferred to his son and daughter-in-law, while awarding Wife a money judgment of $1,500,000.00. Husband contends the trial court lacked authority to award Husband property that is owned by non-parties, and Husband was prejudiced as a result because it materially affected the division of marital property.

Husband also contends that the trial court erred in basing the marital property division on values that were not reasonably proximate to the effective date of the distribution of the property. Finding that the trial court's division of property was based on Husband's misconduct in squandering, transferring, and hiding assets, which is an exception to both the non-party ownership and date of valuation rules, we affirm the judgment.

## Factual and Procedural Background

In 1996, Wife filed a Petition for the dissolution of her marriage to Husband, alleging a marriage date of December 28, 1980, in Matamoras, Mexico, with a separation on June 18, 1996. In his Answer, Husband denied that the parties were ever married.

Before trial, the parties engaged in significant discovery. On Wife's motion, the trial court, on October 29, 1997, enjoined the parties from transferring or encumbering any property. That order has remained in effect continuously since that date.

The first trial in this case occurred on May 13 and 14, 1999, and a judgment dissolving the marriage, but deferring all other issues for a later hearing, was entered on October 29, 1999. Husband filed a timely appeal, and the judgment was affirmed. *James v. James,* 45 S.W.3d 458 (Mo.App.2001) (*"James I"*).

At the second trial held on May 13, 2009, on the remaining deferred issues, Wife testified that the parties had begun various business ventures in 1979 and thereafter, which continued after their marriage in 1980. The umbrella entity for most of these ventures was J & K, of which Wife was initially the president. Although this was a corporation, she and Husband operated it for their own exclusive benefit,

depositing their income into corporate accounts and expending corporate funds for most of their personal expenses in addition to business expenses. At Husband's request, for reasons unexplained at trial, however, the corporate stock was never owned by him. It was initially owned by Wife's parents, who "never got a penny" from it. Later, in 1990 or 1991, following Husband's threats to kill her son if she did not get the stock transferred, Wife had her parents transfer all stock ownership into the name of Husband's son, Jerry James, without the son's knowledge.

Wife further testified that although the parties had separated shortly before, she returned to the marital home on August 10, 1996, to pick up some personal effects, at which time Husband abused her by binding her with wire, cutting off portions of her hair, and burning her with cigarettes, and that Husband later pleaded guilty to criminal assault for his actions in this incident. Wife testified that she took only a Corvette automobile, a Ford Bronco vehicle, and various items of personal property.

In regard to the property left behind with Husband, she testified that around the time of the separation, the parties had $120,000.00 in cash in a safe deposit box; cash on hand of $6,400.00; and account receivables from car sales of $1,050,000.00 held by J & K. Although she had not received any of these receivables after separation, Husband had personally cashed a receivables check for $3,275.49 after the separation. Husband acknowledged that he had personally received some of the account receivables of the sold cars. However, he denied that there was ever any marital property, perhaps due to his persistent contention that there had never been any marriage, despite the contrary ruling by this Court in *James I*.

Wife also testified as to the value of items of property that were subject to Husband's direction and control after the separation. She testified that they owned the cars sold by Trader's Market, a division or subsidiary of J & K, and that there were fifty-four cars at the time of the separation, with a present value of $162,000.00. There was also a 1965 Ford Mustang with a value of $50,000.00 at the time of trial. Regarding the real estate, Husband had conveyed the marital residence ("the residence") to his son and daughter-in-law, Jerry and Michelle James, on September 29, 1997, and Wife testified that it was worth between $125,000.00 and $150,000.00 at the time of trial; Husband had conveyed a parcel of real estate to third parties by the name of McNamara in June 1997, and it was worth $50,000.00 at the time of trial; and the Eagle Rock post office land, the only parcel of real estate still titled in either Husband's or Wife's name at the time of trial, was worth $45,000.00 at the time of trial. Of the property retained by Wife after the separation, she testified that the Corvette automobile had a present value of $5,000.00.

Husband's financial statements dated May 31, 1996, and October 7, 1997, and the J & K financial statements dated June 30, 1995, and May 31, 1996, were admitted in evidence.

The trial court entered a judgment dividing the marital property on June 16, 2009. The trial court found that Husband had been unwilling to comply with discovery; had "at every point attempted to engage in a scheme and/or conspiracy in order to defraud [Wife] of her marital rights," which conduct the trial court supported with findings related to several specific instances of Husband's actions; had physically assaulted Wife; had used his secretary to create a fictitious mortgage

company along with fictitious liens against real estate in the marital estate; had access to the marital property after the parties' separation, most of which had been transferred or hidden; "purposefully hid assets that [the trial] court would have considered marital property;" and had "squandered, fraudulently hidden, and fraudulently conveyed over $860,000.00 of marital property, that was in his name and over $1.8 million in assets held by [J & K]." [1]

In its judgment, the trial court awarded each party the marital property in their respective possessions, with Husband receiving the marital property that he had squandered, hidden, and fraudulently conveyed, which included the marital property, if any, held by J & K and the residence he conveyed to his son and daughter-in-law, as well as the Eagle Rock post office property, which was still in existence as marital property. In addition, Wife was awarded a judgment against Husband for $1,500,000.00. Husband timely appealed.

### Standard of Review

Because this is a court-tried case, we review pursuant to the well-known principles enunciated in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We will affirm the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* "[W]e accept as true the evidence and reasonable inferences therefrom in the light most favorable to the prevailing party and disregard contradictory evidence." *Deck v. Deck*, 64 S.W.3d 870, 873 (Mo.App. 2002). We recognize the superior position

of the trial court in assessing factors such as credibility, sincerity, and character of the witnesses. *Id.*

### Discussion

■ Husband's first point contends that the trial court erred in dividing the martial property because it did not have authority to award him the former marital residence or the marital property held by J & K, in that the owners of that property were not parties in this case. To support the proposition that "the trial court may not classify and distribute as marital property items of property that third persons own[,]" Husband relies upon *In re Marriage of Thomas*, 199 S.W.3d 847, 865–66 (Mo.App.2006) (finding error in award to wife of assets owned by husband's corporation that was his separate property); *Comninellis v. Comninellis*, 99 S.W.3d 502, 512 (Mo.App. 2003) (finding no error in setting aside corporate assets to husband as his separate property where corporation was a party, while noting general rule that "a court may not exercise control over property belonging to a corporation, even if one of the spouses is the sole shareholder of that corporation."), and *Bullard v. Bullard*, 929 S.W.2d 942, 946 (Mo.App.1996) (finding error in award to wife of residence titled in her parents' names as part of her share of marital property). Husband then argues he was prejudiced because the judgment of $1,500,000.00 in favor of Wife is "not just because it reflects the value of other parties' property that the court had no jurisdiction [ [2] ] to award to [Husband]."

Husband's second point contends that the trial court erred in basing its property division, including its $1,500,000.00 award

---

1. Husband does not challenge these findings.

2. Although Husband's use of the word "jurisdiction" has no application in this context, *see Hightower v. Myers*, 304 S.W.3d 727, 733 (Mo.

banc 2010), we understand Husband's contention to be that the trial court lacked any legal, i.e. constitutional, statutory, rule, or common law authority to take such action.

to Wife, on stale property valuations. Husband points out that the trial court expressly rested its judgment on Husband's financial statements dated May 31, 1996, and October 7, 1997, and the J & K financial statements dated June 30, 1995, and May 31, 1996, and did not have before it any evidence of valuation of J & K, or any of its assets, at the time of trial. Citing *Tarneja v. Tarneja,* 164 S.W.3d 555 (Mo.App.2005), Husband argues the trial court's reliance on these twelve– to fourteen-year-old values violated the general rule that the valuation of martial property should be reasonably proximate to the date in which the division of property is to be effective. *Id.* at 562–63.

■ We consider both points together because Husband is correct as to the general rule in both. " '[A]s a general rule, the appropriate date for valuing marital property in a dissolution proceeding is the date of trial.' " *Farnsworth v. Farnsworth,* 108 S.W.3d 834, 841 (Mo.App.2003) (quoting *Conrad v. Conrad,* 76 S.W.3d 305, 314 (Mo.App.2002)). " 'Thus, under this rule, if a marital asset does not exist at the time of trial, the trial court cannot value and include that asset in its division of marital property.' " *Id.* Stated another way, property owned on the date of trial by a third party, who is not a party to the dissolution action, does not exist as marital property and cannot be valued or divided as such. *See Thomas,* 199 S.W.3d at 865–66; *Bullard,* 929 S.W.2d at 946.

■ "There is an exception to the general rule, however, where a spouse is found to have secreted or squandered marital assets in anticipation of the marriage being dissolved. In such a case, the court may hold that spouse liable for the value of the secreted or squandered assets." *Farnsworth,* 108 S.W.3d at 841 (internal citations omitted). Husband did not address this exception in his brief.

Here, Wife's monetary judgment was based upon the trial court's findings that Husband had "squandered, fraudulently hidden, and fraudulently conveyed" marital property that could have been divided. Husband's squandering and hiding of marital property deprived the trial court of the ability to ascertain the continued existence of and the exact nature and extent of the squandered and hidden marital property at the time a division of marital property was to become effective. Such actions remove this case from the application of the general rule and bring it squarely within the exception.

■ In his reply brief, Husband argues that the trial court's monetary award to Wife could not have been made to compensate Wife for Husband's squandering and hiding of marital assets because the trial court's judgment "expressly purported to award [Husband] property in the hands of nonparties." Husband assumes that these awards are inconsistent and that such inconsistency should be resolved in his favor. We see no inconsistency. When a trial court finds that one party has secreted or squandered marital assets, the trial court may properly hold that party liable for the loss of those marital assets by awarding those assets to him or her. *In re Marriage of Wood,* 262 S.W.3d 267, 278 (Mo. App.2008); *see, e.g., Spinabella v. Spinabella,* 293 S.W.3d 34, 37–38 (Mo.App.2009) (finding no abuse of discretion in award of dissipated IRA to the party who squandered or secreted it), and *Wright v. Wright,* 1 S.W.3d 52, 62 (Mo.App.1999) (upholding award of dissipated proceeds from sale of a car while acknowledging that the effect is to reduce the selling party's property award accordingly).

Here, the trial court was prevented from ascertaining, valuing, and dividing specific martial property at the time of trial be-

cause Husband's wrongful squandering and hiding of that property denied it the information necessary to do so. As to point one, Husband has cited us no authority, and we can find none, that prevents a trial court from making a general award of squandered or hidden marital property to the responsible party and at the same time making a monetary award in favor of the other spouse to compensate for such wrongful conduct. As to point two, Husband has not challenged the trial court's utilization of the 1995 through 1997 financial statements in determining the amount of martial property squandered and hidden by him from that time up until the date of trial. Both of Husband's points are denied.

### Decision

The trial court's judgment is affirmed.

SCOTT, C.J., and RAHMEYER, J., concur.