In the
 Missouri Court of Appeals
 Western District
 MICHAEL JAMES REICHARD, )
 )
 Appellant-Respondent, ) WD84256 Consolidated with
 ) WD84273
 v. )
 ) OPINION FILED: November 16, 2021
 KARI LEIGH REICHARD, )
 )
 Respondent-Appellant. )

 Appeal from the Circuit Court of Cole County, Missouri
 The Honorable Patricia S. Joyce, Judge

Before Division Four: Cynthia L. Martin, Chief Judge, Presiding, Anthony Rex Gabbert,
 Judge and Thomas N. Chapman, Judge

 Michael James Reichard ("Husband") and Kari Leigh Reichard ("Wife") each

appeal from a judgment dissolving their marriage. Husband argues that the trial court erred

in: (1) using restrictive parenting time to punish him; (2) its calculation of child support;

(3) awarding the tax dependency exemption for the minor children to Wife; (4) its

distribution and division of certain marital property and debts; and (5) ordering a forced

sale of the marital home and farmland. Wife argues that: (1) the trial court abused its

discretion in denying her request for maintenance; and (2) it was error for the trial court to
prospectively grant Husband overnight parenting time with the minor children when the

youngest child turns five. The trial court's judgment is affirmed in part and reversed in

part, and this matter is remanded for further proceedings as herein instructed.

 Factual and Procedural Background1

 Husband and Wife were married on October 4, 2008. They have two children, S.R.

("Son") and C.R. ("Daughter") (collectively "Children"). The parties separated in

February, 2019. On May 2, 2019, Husband filed for dissolution of the marriage. Son and

Daughter were five and two years old, respectively, at the time the parties' marriage was

dissolved in late 2020.

 Husband works at the United States Postal Service and has a monthly gross income

of $5,580. Wife has a degree in photography and previously worked as a photographer

earning $12,000 per year. At the time of trial, Wife had not worked for approximately six

years because she stayed home with the Children.

 On May 17, 2019, the trial court issued a temporary order, directing that the

Children should reside with Wife, and permitting Husband supervised parenting time. In

April, 2020, the trial court's temporary order was amended to permit Husband overnight

parenting time on Saturdays. During the pendency of the dissolution proceeding, the trial

court ordered Husband to pay $1,350 per month in child support.

 1
 "We view the evidence in the light most favorable to the trial court's judgment and disregard all contrary
evidence and inferences." Collins v. Collins, 586 S.W.3d 282, 286 n.1 (citing Sparks v. Sparks, 417 S.W.3d 269, 276
n.1 (Mo. App. W.D. 2013)).

 2
 The trial court appointed a guardian ad litem. The guardian ad litem filed a proposed

parenting plan which recommended that Wife be awarded sole legal and physical custody

of the Children, with some parenting time afforded to Husband.

 The matter was tried to the court on August 13, 2020, September 22, 2020, and

October 23, 2020. On November 19, 2020, the trial court entered a docket entry as follows:

 Cause considered. Court orders the dissolution of the marriage. As to the
 minor children, sole legal and physical custody of the minor children is
 awarded to [Wife]. Court adopts the parenting plan of the guardian ad litem.
 The plan is altered to allow Saturday night overnight [visits] beginning when
 the youngest child reaches the age of [five]. Form 14 of [Husband] is
 adopted. Guardian ad litem fees are ordered. No maintenance is ordered to
 either party.

 As to the personal property, the Court hereby orders all personal property
 including firearms and farm equipment not specifically included in the 2018
 tax forms [("2018 Federal Depreciation Schedule")] [to] be placed in one
 location. Each party shall alternate picking items of personal property until
 all property is divided. The first pick will be decided by a coin toss.

 As to the farm equipment listed on the [2018 Federal Depreciation Schedule],
 that property shall be auctioned and the proceeds divided equally. The Court
 finds that [Husband] has continued to own 50 head of cattle and those should
 be sold at auction. As to the hay, the Court assesses a value of $5000.00 and
 that should be divided equally. All tax returns should be divided equally.
 Each party is to retain their vehicle they drive and the Court finds they are of
 equal value.

 As to the real estate, it shall be sold by a licensed real estate agent and the
 proceeds divided equally after the debts on the real estate [have] been paid.
 Each party shall be liable for their debts after separation.

 Parties are to prepare formal judgment[.]

 So ordered.

 Though a formal judgment had not yet been entered, on December 3, 2020, Husband

filed a "Motion for New Trial, on in the Alternative, to Amend Judgment" ("Motion for

 3
New Trial") wherein he argued, inter alia, that the trial court committed error because: (1)

it failed to apply the "statutorily recognized principles of allowing frequent and meaningful

parenting times to a parent" and instead "punish[ed] [Husband] without good cause;" (2) it

"purports to order the distribution of farm equipment not actually owned by the parties"

and is an "impossibility since the parties no longer own 50 head of cattle and did not at the

time of trial;" and (3) it "fails to mention how the outstanding debts to . . . the Cabela's

credit card are to be paid" as well as a promissory note to Husband's parents.

 On December 30, 2020, the trial court entered a formal "Judgment of Dissolution of

Marriage" ("Judgment"). The Judgment generally comported with the trial court's docket

entry, though it was more specific and addressed several matters not covered by in the

docket entry. The Judgment awarded sole legal and physical custody of the Children to

Wife, and ordered Husband to pay Wife child support in the amount of $1,357 per month.

The Judgment awarded parenting time to Husband consistent with the guardian ad litem's

recommendations, except the trial court prospectively expanded Husband's parenting time

to include overnight visits when Daughter turned five years old. No maintenance was

awarded either party. Marital property was itemized in the Judgment or by reference to

documents admitted into evidence at trial, and was either ordered divided, or sold with

proceeds divided. Marital debts were itemized in the Judgment with each party's

responsibility assigned. Husband was ordered to pay Wife an equalization payment. No

post-trial motions were filed by either party after the formal Judgment was entered.

 4
 Husband appeals.2 Wife cross appeals. We address additional facts as necessary to

analyze the parties' several points on appeal.

 Standard of Review

 The trial court's judgment in a court-tried dissolution proceeding will be affirmed

"unless it is not supported by substantial evidence, it is against the weight of the evidence,

or it erroneously declares or applies the law." Torres v. Torres, 606 S.W.3d 168, 173-74

(Mo. App. W.D. 2020) (quoting Selby v. Selby, 149 S.W.3d 472, 482 (Mo. App. W.D.

2004)). "We defer to the trial court's superior ability to view the witnesses and determine

credibility; the court is free to believe or disbelieve all, part or none of the testimony given

by any of the witnesses." Id. at 174 (quoting Klockow v. Klockow, 979 S.W.2d 482, 487

(Mo. App. W.D. 1998)). "Consequently, we accept the evidence and inferences favorable

to the trial court's ruling and disregard contrary evidence." Id. (quoting Klockow, 979

S.W.2d at 487).

 We address Husband's seven points on appeal and Wife's two points on cross appeal

in turn.3

 Husband's Appeal

 2
 Both notices of appeal are timely. The trial court's docket entry does not constitute the formal judgment
because it is not denominated a "judgment" or "decree" and because it indicated that the trial court would enter a
formal judgment in a separate document. Wynes v. State, 628 S.W.3d 786, 793 n.6 (Mo. App. W.D. 2021) (citing
Rule 74.01(a)). Husband prematurely filed his Motion for New Trial before the trial court entered its Judgment and
therefore it "shall be considered as filed immediately after" the trial court's Judgment was finally entered on
December 30, 2020. Rule 78.04. The record does not indicate that the trial court ruled on Husband's Motion for
New Trial, and therefore the Judgment became final for the purposes of appeal on March 30, 2021, ninety days after
Husband's Motion for New Trial was filed. Rule 81.05(a)(2)(A). Therefore, both Husband and Wife's notices of
appeal, filed January 11 and 20, 2021, respectively, are premature, but timely. See Saint Luke's Hosp. of Kan. City
v. Benefit Mgmt. Consultants, Inc., 626 S.W.3d 731, 743 n.8 (Mo. App. W.D. 2021) (citation omitted).
 3
 Husband has filed a motion to strike portions of Wife's brief for failure to comply with Rule 84.04(c). We
note that both parties' briefs fail to comply with Rule 84.04(c). Unless otherwise noted, the deficiencies have not
prevented our ability to conduct meaningful appellate review. Husband's motion to strike is denied.

 5
Point One: The Trial Court did not Restrict Husband's Parenting Time as Punishment

 In his first point on appeal, Husband argues that the trial court abused its discretion

by severely restricting his parenting time with the Children to punish Husband.4 In its

Judgment, the trial court considered the appropriate custody arrangement pursuant to

section 452.375.2,5 as well as the relevant factors related to the best interests of the

Children. The trial court found:

 [I]t would be in the best interests of said minor Children that Wife is awarded
 sole legal and physical custody of the minor Children and that the custody,
 visitation and child support of said Children be as set out in specificity in the
 Court Ordered Parenting Plan, attached hereto marked Exhibit "A" and
 incorporated herein by reference, which hereby adopts the Guardian Ad
 Litem's Proposed Parenting Plan with the exception of granting Husband
 overnight visitation on the Saturdays of his regular weekends when the
 youngest child reaches the age of five (5) years.

 "Missouri statutes are clear that in deciding the custody arrangement that would

serve the best interest of a child, the trial court shall consider all relevant factors and enter

findings of fact and conclusions of law, including specifically" the factors listed in section

452.375.2.6 Meseberg v. Meseberg, 580 S.W.3d 59, 67 (Mo. App. W.D. 2019). After

 4
 Husband's first point relied on states: "The trial court erred in its findings related to custody of the minor
children because the Court abused its discretion in that it focused more on [Wife's] proposed findings and her desire
to inappropriately punish [Husband] rather than objectively considering what type of parenting plan would best
promote the children's best interest and their relationships with both parents." (Appellant's Br., p. 12).
 The body of Husband's argument on this point focuses primarily on the factors the trial court considered
pursuant to section 452.375.2, and he argues that the findings "were not supported by the evidence at trial;"
however, his point relied on does not suggest that any of the trial court's findings related to those factors were
against the weight of the evidence or were not supported by the evidence. The point relied on does not identify any
particular factor wherein the trial court erred in determining custody in accordance with the best interests of the
Children. "Our courts 'adhere[] to the well-entrenched doctrine that the questions for decision on appeal are those
stated in the points relied on, and a question not there presented will be considered abandoned.'" KDW Staffing, LLC
v. Grove Constr., LLC, 584 S.W.3d 833, 837 (Mo. App. W.D. 2019) (quoting Gaar v. Gaar's Inc., 994 S.W.2d 612,
616 (Mo. App. S.D. 1999)). Husband's claim that the trial court's findings pursuant to section 452.375.2 "were not
supported by the evidence at trial" is beyond the scope of his point relied on, and is not preserved for our review.
 5
 All statutory references are to RSMo 2016, as supplemented through the date of the Judgment unless
otherwise indicated.
 6
 The factors listed in section 452.375.2 are not exclusive, but they consist of:

 6
considering the factors listed in section 452.375.2, "the trial court has broad discretion to

determine what arrangement is in the best interests of the children under the particular facts

of each case." Davis v. Davis, 582 S.W.3d 100, 107 n.3 (Mo. App. W.D. 2019) (citation

omitted). However, "[i]t is a well-settled principle regarding custody matters that custody

is not to be used as a reward or punishment of either parent, but rather it must be based

upon the best interests of the child." Keel v. Keel, 439 S.W.3d 866, 879 (Mo. App. E.D.

2014) (citation omitted).

 "[W]e presume that the trial court reviewed all the evidence and awarded custody

in the manner it believed would be in the best interests of the children." Meseberg, 580

S.W.3d at 67 (quoting Lalumondiere v. Lalumondiere, 293 S.W.3d 110, 116 (Mo. App.

E.D. 2009)). Further, there is a presumption that "a custody decision was not a punitive

measure unless there is something in the record to indicate animus by the [trial court]

against the non-custodial parent." Miers v. Miers, 53 S.W.3d 592, 597 (Mo. App. W.D.

2001) (citation omitted). These presumptions arise from the trial court's "affirmative duty

to determine what is in the bests interest of the children," and "from the trial court's position

 (1) The wishes of the child's parents as to custody and the proposed parenting plan submitted by
 both parties;
 (2) The needs of the child for a frequent, continuing and meaningful relationship with both
 parents and the ability and willingness of parents to actively perform their functions as mother and
 father for the needs of the child;
 (3) The interaction and interrelationship of the child with parents, siblings, and any other person
 who may significantly affect the child's best interests;
 (4) Which parent is more likely to allow the child frequent, continuing and meaningful contact
 with the other parent;
 (5) The child's adjustment to the child's home, school, and community;
 (6) The mental and physical health of all individuals involved, including any history of abuse of
 any individuals involved. . . .
 (7) The intention of either parent to relocate the principal residence of the child; and
 (8) The wishes of a child as to the child's custodian.

 7
to better determine 'not only the credibility of the witnesses and parties directly but also

their sincerity, character, and other trial intangibles which might not be completely

revealed by the record.'" Meseberg, 580 S.W.3d at 67 (quoting Lalumondiere, 293 S.W.3d

at 116); see Miers, 53 S.W.3d at 596.

 It is Husband's burden to establish that the trial court abused its discretion by using

its award of parenting time to punish him. Keel, 439 S.W.3d at 875. Husband has not

sustained this burden.

 Husband first argues that the trial court's intent to punish him is supported by the

following statement in the Judgment, made in connection with the best interest factor

addressing which parent is more likely to allow the child frequent, continuing, and

meaningful contact with the other parent:

 The Court recognizes Wife's concerns and efforts to limit Husband's time
 with the Children. The Court finds that said concerns are not unjustifiable
 based on injuries sustained by [Son], due to actions of Husband."

Husband argues that "[p]resumably, the 'injuries' referenced are those sustained by [Son]"

when Husband accidently ran over him with a piece of farm equipment prior to the parties'

separation. Husband intimates that the trial court was punishing him for his Son's prior

injuries.

 We disagree. Read in context, it is apparent that the trial court's comment about the

accident was not punitive, and was instead explanatory of its conclusion that despite Wife's

concern about the Children spending time with Husband given Son's prior injury, she

would comply with a court-ordered parenting plan, and had "attempted to encourage

Husband's engagement and participation in the Children's activities, so as to afford

 8
Husband the opportunity to be an active participant in the Children's lives." In contrast,

when the trial court considered the likelihood that Husband would facilitate frequent,

continuing, and meaningful contact with Wife, the trial court found:

 Husband has engaged in an active course of behavior to encourage the
 Children to be deceitful or evasive with Wife about activities at Husband's
 home, that Husband has been unreasonable in his denials of requests by Wife
 to attend and/or participate in the Children's activities during his visitation
 periods and fails to protect the children from hurtful or demeaning comments
 made by Husband or Husband's family about Wife in the presence of the
 Children.

We reject Husband's contention that the trial court's reference to Son's accident was

demonstrative of an intent to punish Husband.7

 Husband also complains about the fact that while examining the best interest factor

relating to the mental and physical health of all individuals involved, including any history

of abuse, the trial court referred to evidence concerning Husband's alcohol consumption.

Prior to trial, the trial court had ordered Husband to submit to an alcohol abuse assessment

and to refrain from consuming alcohol for two hours prior to and during visits with the

Children. Husband was later ordered to complete an alcohol monitoring program, which

he completed without incident. Husband argues that the trial court's reference to his alcohol

consumption as a basis for restricting his parenting time establishes an intent to punish

 7
 Even had the trial court factored Son's accident into its parenting time determination, we would not find
that it did so to punish Husband. Husband appears to argue that because Son survived the accident and healed from
his injuries, and because it happened approximately two years before the trial court's Judgment was entered, that the
trial court should not have considered it. We disagree. Despite the fact that the accident occurred prior to the filing
of the dissolution, it resulted in serious injuries to Son and suggested a lack of attentiveness when the Children were
around farm equipment. This conclusion is reinforced by the trial court's finding that Husband "seems to have an
inability to appropriately recognize and accommodate the needs of the Children, based on their current ages,
maturity and abilities."

 9
Husband because "the evidence clearly showed that [Husband] had refrained from the

consumption of any alcohol for at least 120 days."

 We disagree. While it is true that Husband completed court ordered alcohol

monitoring without incident, there was evidence that Husband had issues with alcohol

abuse during the marriage, as Husband admitted that there was a period where he drank

regularly, causing tension between the parties. In addition, although Husband completed

alcohol monitoring, he resumed drinking after the monitoring period ended, and testified

that he planned to continue consuming alcohol in the future. We fail to see how reference

to Husband's consumption of alcohol suggests that the trial court sought to punish Husband

by restricting parenting time. Rather, the trial court properly considered Husband's alcohol

use, an issue raised prior to and at trial, in its determination of the mental and physical

health of the individuals involved as required in assessing the best interests of the

Children.8

 Husband has not sustained his burden to establish that the trial court restricted

parenting time to punish Husband.

 Husband's Point One is denied.

Point Two: Even if the Trial Court Incorrectly Calculated the Cost of Health Insurance
on its Form 14, the Error would have No Impact on the Presumed Child Support Amount

 8
 This was not the only evidence the trial court considered in its analysis of this best interest factor. The
trial court also found that Husband was verbally abusive toward Wife, that his family had "stalked her, followed her,
and called her demeaning names." The trial court found that both Husband and Wife were "not able to work
together as joint custodians for the best interest of the minor Children and therefore, this factor favors the Court-
Ordered Parenting Plan entered herein."

 10
 In his second point on appeal, Husband argues that the trial court improperly

calculated the cost of health insurance for the Children on its Form 14, and as a result, erred

in its calculation of the presumed child support amount. We disagree, as even if the cost

of health insurance on the Form 14 prepared by the trial court is incorrect, that error would

not have impacted the presumed child support amount calculated and approved by the trial

court.

 To determine child support, the trial court must "calculate the presumed correct

child support amount pursuant to Form 14, either by accepting one of the parties' proposed

calculations, or by rejecting the parties proposed Form 14s and preparing its own."

Schuman v. Schuman, 612 S.W.3d 232, 236 (Mo. App. W.D. 2020) (citing section 452.340;

Rule 88.01; Edwards v. Edwards, 475 S.W.3d 218, 222 (Mo. App. W.D. 2015)). Then,

the trial court must "determine whether to rebut the presumed child support amount as

unjust and inappropriate." Id. (citing Edwards, 475 S.W.3d at 222-23).

 "When 'determining whether the trial court correctly calculated the [presumed child

support award], this Court reviews the calculation to ensure that not only is it done

accurately from a mathematical standpoint, but that the various items and their amounts

were properly included in the calculation and supported by substantial evidence.'" Dodge

v. Dodge, 398 S.W.3d 49, 52 (Mo. App. W.D. 2013) (quoting Bond v. Bond, 77 S.W.3d 7,

11 (Mo. App. E.D. 2002)). "Courts must follow Form 14 and the 'Directions, Comments

for use and examples for completion of Form No. 14' [] to input the correct amounts of

income, expenses, and other relevant information to calculate a [presumed child support

 11
award]." Lynch v. Lynch, 592 S.W.3d 806, 817 (Mo. App. E.D. 2020) (citing Rule 88.01;

Form 14).

 The trial court prepared its own Form 14, finding that "Wife's monthly gross income

for purposes of calculating child support is zero," and that Husband's monthly gross income

is $5,580 (his income from the Postal Service). The trial court found that Husband's basic

child support obligation was $1,357. Husband does not challenge the attribution of income

to the parties, or the calculation of the basic child support obligation on the trial court's

Form 14.

 Lines 6a through 6e on Form 14 provide for "Additional Child-Rearing Costs of

Parents." Line 6c provides for "Health insurance costs for the children who are subjects of

this proceeding." On Husband's Form 14, he showed a cost of $230 per month to provide

health insurance for the Children on line 6c. In paragraph twelve of the Judgment, the trial

court reflected its findings related to line 6c on the Form 14 it prepared:

 Husband maintains the health insurance [for] the Children at a monthly cost
 to him, estimated by the Court, of approximately $115.00 per month, as the
 only information provided by Husband as to that expense was a total
 monthly amount of $230.00, which represent[s] [t]he cost to maintain
 coverage for both parties and both children, so it is appropriate to calculate
 Husband's costs associated with maintaining health insurance for the minor
 children at $115.00 per month.9

 9
 The trial court entered the $115 per month figure under line 6d, "Uninsured agreed-upon or court-ordered
extraordinary medical costs," however, it is apparent from the trial court's explanation of its health insurance cost
calculation in paragraph twelve, and from the absence of any agreed-upon or court-ordered extraordinary medical
costs in the record, that the trial court placed this figure under line 6d by mistake.

 12
(Emphasis added.) The trial court used the $115 amount on line 6c to perform the balance

of the calculations required on Form 14, resulting in a presumed child support amount of

$1,357. The trial court found this amount to be just and appropriate.

 Husband challenges the trial court's finding that the cost of health insurance for the

Children was $115 a month instead of $230 a month. Ordinarily, we would be required to

address the merits of Husband's contention "[b]ecause the formula in calculating Form 14

is not discretionary, [and] any error in calculating [l]ine items inevitably results in [an]

erroneous presumed child support amount." Schumert v. Dreyer, 481 S.W.3d 885, 889-90

(Mo. App. E.D. 2016) (citation omitted). That is not the case here, however. Given the

parties' proportionate share of combined monthly gross income, Husband is required to pay

100 percent of the Form 14 presumed child support amount, and is also obligated to pay

for health insurance for the Children. Under these circumstances, the amount on line 6c,

whatever it may be, is replicated on line 7 (under both the "parent paying support" column

and the "combined" column of Form 14), and on line 10 (under the "parent paying support"

column of Form 14), with the effect being that the sum cancels out, leaving the presumed

child support amount unaffected. Thus, even if the trial court had used $230 as the cost of

health insurance for the Children, the presumed child support amount would have remained

$1,357.

 Pursuant to Rule 84.13(b), we are not permitted to reverse a judgment unless we

find that "error was committed by the trial court . . . materially affecting the merits of the

action." Because the trial court's alleged error in determining the cost of health insurance

 13
for the Children would not affect the child support award ordered in the Judgment,

Husband's second point on appeal is without merit.10

 Husband's Point Two is denied.11

Point Three: The Trial Court did not Err in Awarding Tax Exemptions

 In Husband's third point on appeal, he argues that the trial court erred in awarding

Wife the dependency exemption for the Children because the evidence did not support this

award, as Wife testified that she intended to remain unemployed. Husband contends that

because Wife would not earn any income, she purportedly would not benefit from the tax

exemption.

 Husband has not explained in his Brief how he preserved this issue for our review

as required by Rule 84.04(e). Rule 78.07(b) states: "Except as otherwise provided in Rule

78.07(c), in cases tried without a jury or with an advisory jury, neither a motion for a new

trial nor a motion to amend the judgment or opinion is necessary to preserve any matter for

appellate review if the matter was previously presented to the trial court." (Emphasis

added.) Husband has not indicated where in the record below he argued that despite Form

14's Assumption 7, which provides that "[t]he schedule of basic child support obligations

assumes that the parent entitled to receive support claims the tax exemption for the children

entitled to support," that he was entitled to the tax dependency exemption because Wife

 10
 Husband has not argued that a change on line 6c without a corresponding change in the calculated
presumed child support amount would alter the trial court's determination that the presumed child support amount
need not be rebutted as unjust or inappropriate. We therefore do not address that issue.
 11
 Husband argues for the first time in his reply brief that "[t]he fact that the trial court's Form 14 includes
this same erroneous calculation [that is found in Wife's proposed judgment] further demonstrates how the trial court
abused its discretion by simply accepting the proposed judgment offered by [Wife] rather than considering all of the
evidence . . . ." This argument is not preserved for review. Rasmussen v. Ill. Cas. Co., 628 S.W.3d 166, 174-75
(Mo. App. W.D. 2021) (arguments raised for the first time in a reply brief are not preserved for appellate review).

 14
purportedly would not receive any benefit from the tax exemption. Our review of the

record indicates that he did not previously present this issue to the trial court, either at trial,

or in a timely filed Motion for New Trial. As a result, he has failed to preserve this point

for appellate review. See Corey v. Corey, 712 S.W.2d 708, 710 (Mo. App. E.D. 1986)

(husband failed to raise his argument "that the trial court erred in failing to provide that

husband should have the right to claim both children as dependents on his income tax

returns" with the trial court and thus the issue was not preserved for appellate review).

 Husband's Point Three is denied.

Point Four: The Trial Court's Division of Marital Property is Supported by the Evidence
Except as to Trailers Owned in Part by Third Parties

 In Husband's fourth point on appeal, he argues that the trial court's findings

concerning the distribution of marital property were not supported by the evidence because

the trial court ordered to be sold or distributed property no longer in existence at the time

of trial, or not owned exclusively or at all by Husband and Wife. Specifically, Husband

argues that the trial court improperly included the following equipment, animals, and

money in the list of marital property to be distributed: (1) Case IH 75 C Farmall tractor;

(2) stock trailer and twenty-foot gooseneck trailer; (3) Tonutti disc mower; (4) 50 head of

cattle; and (5) 2019 federal and state income tax refunds.

 A trial court has substantial discretion in identifying, valuing, and dividing marital

property and debts, and we "will not interfere unless the division is so heavily weighted in

favor of one party to amount to an abuse of discretion." Torres, 606 S.W.3d at 174 (quoting

Russum v. Russum, 214 S.W.3d 376, 384 (Mo. App. W.D. 2007)); Parciak v. Parciak, 553

 15
S.W.3d 446, 456 (Mo. App. E.D. 2018) (citation omitted). We presume that the property

division was correct, and Husband, as appellant, bears the burden of overcoming the

presumption. Torres, 606 S.W.3d at 174 (citation omitted).

 In its Judgment, the trial court issued the following findings relevant to the tractor,

trailers, and disc mower:

 The Court finds that Wife's identification and valuation of the marital farm
 equipment, crops and animals is credible as it is clear from the testimony
 that Husband has been deceitful and attempted to hide and or transmute
 said assets in order to conceal them from this Court's consideration.
 Therefore, the Court specifically finds that all farm equipment listed on the
 [2018 Federal Depreciation Schedule], . . . specifically attached hereto,
 marked "Exhibit C" and incorporated herein by reference, shall be auctioned
 and the proceeds divided equally.

(Emphasis added.) The 2018 Federal Depreciation Schedule listed, among other things,

the following items: (1) "Case IH 75 C Farmall Trac"; (2) "Stock Trailer Partial Int"; (3)

"20' Gooseneck Trailer 1/2"; and (4) "DMP 245 Disc Mower". Therefore, these items were

ordered to be liquidated and the proceeds split evenly between the parties.

 With respect to the cattle, the trial court found that "Husband has continued to own

50 head of cattle, which should have calved and are now in pairs, and those cattle/calf pairs,

with the cattle being Black Angus breed and a minimum of 3 years old and a maximum of

4 years old as identified on the parties' [2018 Federal Depreciation Schedule], shall be sold

at auction" and it ordered that the parties divide the proceeds evenly.

 Finally, with respect to the tax refunds, the trial court included 2019 federal and

state tax refunds received by Husband on its list of marital property to be distributed, and

awarded the full amount of both refunds to Husband.

 16
 Case IH 75 C Farmall Tractor

 Husband claims that the trial court erred in ordering the sale of this tractor because

it is owned by his father, and was not marital property. Husband's father, Jim Reichard,

testified that he purchased and owned the Case IH 75 C Farmall tractor, but that he allowed

Husband to use the tractor.

 "[P]roperty owned on the date of trial by a third party, who is not a party to the

dissolution action, does not exist as marital property and cannot be valued or divided as

such." In re Marriage of James, 319 S.W.3d 456, 460 (Mo. App. S.D. 2010) (citation

omitted). The issue, then, is whether the trial court's conclusion that the Case IH 75 C

Farmall tractor was owned by Husband and Wife at the time of trial is supported by the

evidence.

 At trial, Husband admitted into evidence a purchase order receipt for a Case IH 100

C Farmall Tractor and a Case IH 75 C Farmall Tractor. The purchase order listed

Husband's name under the "Purchaser's Full Name" and the subsequent line stated "d/b/a

Jim Reichard." Husband and Wife's home address was listed as the "Purchaser's Address."

On Wife's "Personal Property/Farm Equipment Listing with Explanations," she indicated

the following, with respect to the tractors:

 We all would get a better deal if we purchased two tractors, so per the receipt,
 the purchaser was [Husband] at the marital address d/b/a as Jim Reichard.
 Jim paid for both tractors and [Husband] reimbursed him for one. After our
 tractor trade-ins [Husband] paid Jim $13,800, check #1267, on 8/2/2017.
 [Husband] hand wrote the accountant a note . . . explaining this and that we
 own the tractor. On the 2018 tax depreciation schedule [it states] that we own
 it.

 17
A copy of this check was admitted into evidence.

 When asked about the check and whether Husband and Wife gave him money

towards the tractor purchase, Jim Reichard stated:

 I don't know for sure. . . . What happened was this. [The seller] gave
 [Husband] a special deal. If we bought two, we got the second one very
 cheap. And, quite honestly, I don't know if that came from them or not. But
 [Husband] told me, he said, "Dad, we can just give them that dollar amount,
 and we'll have two new tractors." And whether that's them I don't know.
 Could very well be.

This testimony support's Wife's contention that she and Husband reimbursed Jim Reichard

for the Case IH 75 C Farmall tractor and therefore owned the tractor.

 Consistent with this conclusion, Husband and Wife's accountant testified that the

tractor was listed on the parties' 2018 Federal Depreciation Schedule, but that in 2020 (near

the time dissolution proceedings were commenced), Husband asked her to amend the

parties' 2018 tax return to remove the tractor from the depreciation schedule. The

accountant testified that this "was in direct contradiction to information [she] had in [her]

files" and she "didn't feel like [she] could rely on the information [she] was receiving, so

[she] felt it was [her] ethical obligation to withdraw from the engagement."

 The trial court's finding that Husband and Wife owned the Case IH 75 C Farmall

Tractor is supported by substantial evidence. The fact that Husband presented conflicting

evidence is immaterial, particularly as the trial court specifically found Wife's

identification of the tractor as marital property to be credible, and found that Husband had

been deceitful in attempting to conceal assets. "We defer to the trial court's superior ability

to view the witnesses and determine credibility; the court is free to believe or disbelieve

 18
all, part or none of the testimony given by any of the witnesses." Torres, 606 S.W.3d at

174 (quoting Klockow, 979 S.W.2d at 487).

 Stock trailer and twenty-foot gooseneck trailer

 Husband contends that the trial court erred in ordering the stock trailer and

gooseneck trailer to be sold with the proceeds divided because the evidence established

that the trailers were at least partially owned by his cousin. As noted, supra, "property

owned on the date of trial by a third party, who is not a party to the dissolution action, does

not exist as marital property and cannot be valued or divided as such." James, 319 S.W.3d

at 460.

 Husband's cousin testified that she and her spouse owned the stock trailer and

gooseneck trailer that are at issue in this case. Copies of their 2015 and 2018 personal

property tax receipts were admitted at trial, listing both trailers as property owned by

Husband's cousin and her spouse. Husband also testified that his cousin owned both the

stock trailer and gooseneck trailer, but that he paid money to use the trailers, which were

occasionally located on his farm.

 However, Husband and Wife's 2018 Federal Depreciation Schedule lists the trailers

as property owned by them, though the items are listed as "Stock Trailer Partial Int" and

"20' Gooseneck Trailer 1/2." (Emphasis added.) Notably, in Wife's Statement of Property

and Liabilities and in her "Personal Property/Farm Equipment Listing with Explanations,"

both filed with the trial court, she acknowledged that she and Husband only owned a

"partial interest" in the stock trailer and a "half interest" in the gooseneck trailer.

 19
 On appeal, Wife argues that she "presented testimony and evidence that in fact the

[cousin's] interest [was] purchased by marital funds via checks from [the] marital account

on March 8, 2012 and December 29, 2019." The evidence does not support Wife's

contention. In fact, Wife's argument on appeal directly contradicts her trial testimony that,

"We own the [stock] trailer with his cousin."

 Because no evidence supports the conclusion that the stock trailer and gooseneck

trailer are owned exclusively by Husband and Wife, it was error for the trial court to direct

the sale of that property and the division of proceeds between Husband and Wife. James,

319 S.W.3d at 460. Accordingly, we have no choice but to reverse the Judgment to the

extent it includes both trailers on the list of property identified in paragraph 22(f) of the

Judgment as property to be sold with the proceeds divided. We remand this matter with

instructions to the trial court to value the marital property interest in the stock trailer and

gooseneck trailer, and to determine how that interest should be distributed.

 Tonutti disc mower

 The Judgment treated the disc mower as marital property. Husband contends this

was error because he testified that the disc mower had been traded in for a discbine on

April 30, 2015, such that the parties no longer owned the disc mower at the time of trial.

"Generally, the appropriate date for valuing marital property is the date of trial." Martin v.

Martin, 504 S.W.3d 130, 135-36 (Mo. App. W.D. 2016) (citing Schubert v. Schubert, 366

S.W.3d 55, 72 (Mo. App. E.D. 2012)). "Therefore, under this rule, if a marital asset does

not exist at the time of trial, the court cannot value and include it in the division of marital

property." Id. (citing Schubert, 366 S.W.3d at 72).

 20
 Husband's evidence included a receipt which he contends establishes that the disc

mower was traded in for the discbine. The receipt shows that on April 30, 2015, Husband

purchased a "Used New Holland H7230 discbine" for $15,500 and that he traded in a

"Tonutti 8 ft cutter" which was valued at $4,500.

 However, Wife's evidence indicated that the parties still owned the disc mower.

And the parties' accountant testified that if she had been provided a receipt that showed

that the disc mower was traded in, she would have reflected as much on Husband and

Wife's 2018 Federal Depreciation Schedule. Yet, the 2018 Federal Depreciation Schedule

reflected that the parties owned both a "DMP 245 Disc Mower" and a "Used New HDL

Discbine."

 We defer to the trial court's determination that Wife's identification and valuation

of the martial farm equipment, including the disc mower, was credible. The trial court did

not err in including the disc mower on the list of marital property to be divided between

the parties.

 50 head of cattle

 Husband also argues that the trial court erred in finding that Husband owned 50

head of cattle at the time of trial because he presented unrefuted evidence that he sold all

of his cattle in 2019 and 2020, and the "trial court abused its discretion in arbitrarily coming

up with a number."

 At trial, there was considerable dispute over whether the parties still owned any

cattle, and whether Husband earned any income from his or his father's cattle operation.

Husband testified that he farmed and worked cattle only as a hobby and that he helped his

 21
dad for fun and without compensation. Husband claimed that he sold all of his cattle to his

father in January 2020. His father testified that he did purchase some cattle from Husband

in January 2020. An unsigned and undated "Purchase Agreement" was admitted at trial,

reflecting a purported sale of a number of cattle. Husband presented receipts showing that

in 2019, he sold other cattle.

 However, Wife's testimony, which the trial court found to be credible, refuted

Husband's claim that he had sold all of the cattle. Wife testified that even after accounting

for Husband's sale of cattle in 2019 and 2020, the couple still owned 153.5 cattle12 at the

time of trial. Moreover, we point out that Husband's evidence supporting his contention

that he sold all of his cattle to his father in January 2020 is an unsigned and undated

document titled, "Purchase Agreement." We find no error in the trial court's conclusion

that 50 head of cattle should be treated as marital property.

 Tax refunds

 Finally, Husband argues that the trial court erred in including the 2019 federal and

state tax refunds as marital property requiring distribution because the funds no longer

existed at the time of trial.

 As a general rule, "[p]roceeds from federal and state tax refunds are presumed to be

marital property and subject to division by the trial court." Kester v. Kester, 108 S.W.3d

213, 222 (Mo. App. S.D. 2003) (citation omitted). However, "if a marital asset does not

exist at the time of trial, the court cannot value and include it in the division of marital

 12
 During trial, the trial court asked how the parties would own "a half cow," and Wife's counsel responded,
"they have a half-interest in one."

 22
property." Martin, 504 S.W.3d at 135-36 (citation omitted). Marital property used by a

spouse to pay marital debts or ordinary living expenses prior to dissolution cannot be

considered in the property division. Plager v. Plager, 426 S.W.3d 689, 696 (Mo. App.

E.D. 2014) (citation omitted); Fitzwater v. Fitzwater, 151 S.W.3d 135, 137-38 (Mo. App.

W.D. 2004) (citations omitted). There is an exception to this rule "where a party has

intentionally secreted or squandered a marital asset in anticipation of the marriage being

dissolved, [and] the court may hold that party liable for the amount of the asset by awarding

it to him or her in its division of the marital property." Martin, 504 S.W.3d at 136 (quoting

Schubert, 366 S.W.3d at 72).

 In 2019, Husband filed his taxes separately from Wife. He received a federal tax

refund of $10,739 and a state tax refund of $2,244. Husband testified that he used this

money for the following: (1) three child support payments pursuant to a temporary order;

(2) approximately $5,000 in attorney's fees; (3) $1,700 in guardian ad litem fees; and (3)

an unspecified amount in bills including mortgage payments and electrical bills. Husband

claims that because he used the refunds to pay marital debts and living expenses, the trial

court improperly considered the money in the division of marital property.

 We disagree. Husband provides no authority for the proposition that the payment

of court ordered temporary child support is a marital debt or ordinary living expense that

can be relied on to "offset" a tax refund as to warrant its exclusion from the marital property

to be distributed. The same is true with respect of guardian ad litem and attorney's fees.

This is especially so as Husband offered no evidence that would permit the inference that

Wife authorized use of the tax refunds for these expenses. See Noland-Vance v. Vance,

 23
321 S.W.3d 398, 422 n.20 (Mo. App. S.D. 2010) (Wife attempted "to inflate the marital

debts allocated to her by including her attorney's fees, the share of [husband's] attorney's

fees she was ordered to pay and the GAL fees she was ordered to pay. These litigation

expenses are not properly includable as part of the marital debts to be divided by the trial

court."); Schubert, 366 S.W.3d at 72 (the court rejected husband's argument that marital

funds were appropriately used for ordinary living expenses "[b]ased on the timing of these

expenditures, and the facts that Husband's expenses were not routine or authorized by

Wife").

 Husband also failed to present any evidence regarding the amount of the mortgage

payments or electrical bills allegedly paid from the tax refunds. The trial court was free to

disbelieve Husband's vague assertions that he used the tax refunds for these expenses, or

that he had spent the refunds at all. Schubert, 366 S.W.3d at 72; Schneider v. Schneider,

824 S.W.2d 942, 947 (Mo. App. E.D. 1992) (husband "failed to provide detailed figures

with regard to what constituted his expenditures" on "farm-related living expenses

including: hay, veterinary bills, feed, gas, fuel, repairs, and miscellaneous expenses" and

thus the appellate court could not conclude that the trial court "erred in failing to believe

[his] vague testimony that he used expended money for living expenses"); Wright v.

Wright, 1 S.W.3d 52, 62 (Mo. App. W.D. 1999) ("Other than her testimony, [wife] offered

no evidence to show that the proceeds were used for her living expenses. The court found

that the $4,000 was 'unaccounted for,' obviously choosing to disbelieve the appellant's

testimony that she used the money for her living expenses, but used it for other purposes,

which it was free to do.").

 24
 Even if Husband had provided evidentiary support for his purported expenditures

from the tax refunds, the trial court was entitled to disregard the general rule that a marital

asset not in existence at the time of trial cannot be valued and distributed. There is an

exception where a spouse is found to have secreted or squandered marital assets in

anticipation of the marriage being dissolved. Martin, 504 S.W.3d at 136 (citation omitted).

The trial court "is afforded broad discretion in determining issues relating to whether assets

were squandered by a party" and it "does not have to specifically find that it believes

monies have been secreted or squandered in anticipation of divorce, because its actions can

imply such a conclusion where sufficient evidence exists to support the conclusion."

Spinabella v. Spinabella, 293 S.W.3d 34, 37 (Mo. App. S.D. 2009) (citation omitted);

Schubert, 366 S.W.3d at 72 (citation omitted). Here, the trial court found that "Husband

has been deceitful and attempted to hide and or transmute [other assets] in order to conceal

them" from the trial court's consideration. And, Husband testified that he believed that

Wife wasn't entitled to any portion of the refunds "because she doesn't work." Thus, the

trial court could properly have concluded that it was appropriate to treat the tax refunds as

marital property distributed to Husband, even if the refunds had already been spent. "The

trial court's inclusion of the amount of the [tax refunds] as marital property awarded

[H]usband is equivalent to an order that the funds be refunded." Spinabella, 293 S.W.3d

at 37. Consequently, the trial court did not err in including the full amount of the federal

and state tax refunds in its distribution of property.

 In summary, we find no error in the trial court's findings relating to characterization

and distribution of the tractor, disc mower, 50 head of cattle, and tax refunds as marital

 25
property to be divided as directed by the Judgment. However, the Judgment's directive

that the stock trailer and gooseneck trailer be sold, with the proceeds divided, must be

reversed and remanded with directions to the trial court to distribute the marital interest in

said property in a manner that does not interfere with the partial ownership interest of

Husband's cousin and her spouse.

 Husband's Point Four is granted in part and denied in part.

Point Five: The Trial Court Erred in Failing to Treat Credit Card Debt Accrued During
the Parties' Separation as Marital Debt, but did not Err in Determining that there was
no Debt owed to Husband's Parents

 In his fifth point on appeal, Husband argues that the trial court abused its discretion

in assigning responsibility for marital debts because it failed to treat two debts incurred

during the marriage as marital property, resulting in an unfair division. Specifically,

Husband argues that the trial court erroneously failed to treat his post-separation Cabela's

credit card balance in the amount of $17,616, and a $37,000 loan from Husband's parents,

as marital debts.

 "Section 452.330, which governs the division of property in a dissolution

proceeding, sets forth a two-step process that is to be followed by the trial court: (1) the

court must first set aside to each spouse his or her non-marital property; and (2) then divide

the marital property and debts in such proportions as the court deems just." Alport v.

Alport, 571 S.W.3d 680, 685 (Mo. App. W.D. 2019) (quoting In re Marriage of Michel,

142 S.W.3d 912, 920 (Mo. App. S.D. 2004)). Section 452.330 also "requires that 'marital

debts' be distributed in the same manner as 'marital property.'" England v. England, 454

S.W.3d 912, 921 (Mo. App. W.D. 2015) (quoting Gryder v. Gryder, 129 S.W.3d 467, 471

 26
(Mo. App. S.D. 2004)). Thus, "[f]indings should be made as to whether an asset [or debt]

is marital property subject to division or nonmarital property belonging to a spouse

individually and not subject to division." Alport, 571 S.W.3d at 685.

 The Judgment lists those debts found by the trial court to be marital debts, and

divided responsibility for the debts, assigning responsibility to Husband for $21,087 and

to Wife for $22,264.59.13 Neither the Cabela's credit card balance, nor the purported loan

from Husband's parents, were listed as marital debts.

 Husband testified that subsequent to the parties' separation, but before the Judgment

was entered, he accrued a $17,616 debt on his Cabela's credit card for farm expenses.

Husband also claimed that his parents loaned he and Wife $30,000 in 2013 to purchase a

piece of land, and that the parties still owe his parents this sum, plus $7,000 in interest.

Husband admitted into evidence a promissory note, purportedly signed by Husband and

Wife, documenting the loan from Husband's parents. The promissory note contained

several anomalies, as numerous dates were crossed out and Wife's signature appeared on a

separate page from the balance of the note. Wife testified that although money was

borrowed from Husband's parents many years prior, the debt had already been repaid. Wife

also testified that she did not sign the promissory note, suggesting that her signature on the

note was forged. Husband's father testified that he had not been repaid, but had never

considered attempting to collect on the promissory note until Husband and Wife separated.

 13
 Wife represented that as of September 20, 2020, she owed $44,427.64 to her parents for post-separation
rent, living expenses, and attorney's fees. The trial court designated this as a marital debt, but "decreased the amount
of [the] debt owed to [Wife's parents] by the amount of [attorney's] fees and guardian ad litem fees which are
disallowed by the Court" to $20,848.92, which was included in the total amount of the marital debt assigned to
Wife.

 27
 With respect to the Cabela's credit card debt, the trial court found:

 The Court finds that the debt identified by Husband as "Cabela's Mastercard"
 is Husband's sole responsibility and was substantially increased by Husband,
 without actions or charges by Wife, since the date of separation and therefore,
 represents his personal charges as Wife had no part in the incurrence of same
 or opportunity to object to the incurrence of same. Husband is hereby ordered
 to hold Wife harmless from the same.

With respect to the purported loan from Husband's parents, the trial court found:

 The Court finds that Husband['s] testimony . . . of the alleged debt to his
 parents, Jim and Patsy Reichard, is not credible in that Jim Reichard
 specifically testified that any debt, if it is exists, was not expected to be repaid
 until this dissolution action was initiated and Husband's testimony [was] that
 he does significant work to manage and/or operate Jim Reichard's cattle
 operation "for fun" and without any type of compensation. However,
 Husband is hereby ordered to hold Wife harmless from the same.

 As to the loan from Husband's parents, the trial court's finding effectively amounts

to a conclusion that no debt existed. This conclusion is supported by substantial evidence.

The trial court "was at liberty to believe or disbelieve [H]usband's evidence establishing

[his] indebtedness" and it found Husband's testimony that a loan was owed to his parents

to be not credible. Gryder, 129 S.W.3d at 473. It was not error to fail to include the debt

purportedly owed to Husband's parents on the list of marital debts for which responsibility

was to be divided.

 The trial court failed to specify whether the Cabela's credit card debt was marital or

nonmarital debt as required by section 452.330.1.14 It appears, however, that the trial court

 14
 Because it is not clear from the trial court's Judgment that it properly followed the two-step process set
forth in section 452.330.1 with respect to the Cabela's credit card debt, Husband arguably had an obligation to raise
this issue in a post-trial motion as a condition to preserving the issue for appellate review. Alport, 571 S.W.3d at
685 (Husband's argument that the trial court "was required to first distinguish between marital and nonmarital
property and set aside the nonmarital property to each party before dividing the marital property" is not properly
preserved because husband "did not file a post-trial motion to amend the motion court's judgment to allow the trial

 28
effectively treated the credit card debt as nonmarital debt, since the debt was not listed on

the chart in the Judgment itemizing the marital debt or considered in determining how to

divide responsibility for the debt, and was assigned to Husband for reasons that suggest the

trial court believed it could treat the debt as nonmarital.

 Wife does not dispute that the Cabela's credit card debt was accrued during the

marriage for farm related expenses, albeit after the parties separated. Settled precedent

required the trial court to treat the credit card debt as marital debt, and then to consider the

debt in connection with its overall division of marital assets and liabilities. "[T]he phrase

'marital debts' encompasses all debts incurred during the marriage, either jointly or

separately." Rogers v. Rogers, 253 S.W.3d 134, 138 (Mo. App. W.D. 2008) (quoting

Dunnagan v. Dunnagan, 239 S.W.3d 181, 187 (Mo. App. S.D. 2007)). "[T]he fact that a

spouse does not control or participate in the decision to make a particular debt does not

preclude allocation of that debt to the non-participating spouse." In re Marriage of Pahlow,

39 S.W.3d 87, 92 (Mo. App. S.D. 2001) (quoting Hughes v. Hughes, 994 S.W.2d 103, 107

(Mo. App. S.D. 1999)); England, 454 S.W.3d at 922. More "[s]pecifically, monies

borrowed after parties separated, but while they are still married, are presumed marital."

Morse v. Morse, 366 S.W.3d 49, 54 (Mo. App. S.D. 2012) (citing Pahlow, 39 S.W.3d at

92) (vehicle loan obtained after the parties separated was properly characterized as a

court to address any shortfall in its findings prior to raising the issue before us."); In re Marriage of Wood, 262
S.W.3d 267, 273 (Mo. App. S.D. 2008) ("It is arguable that Husband's claim that the trial court failed to classify
Wife's retirement account as either marital or non-marital property has not been properly preserved for our review
because the matter should have been raised with the trial court by timely filing a motion for an amended
judgment."). However, we are crediting Husband with raising the issue of how the trial court treated the Cabela's
credit card debt in his prematurely filed Motion for New Trial.

 29
marital debt).15 Though there are exceptions to this presumption found in section

452.330.2, none apply here.

 By treating the $17,616 credit card debt as a nonmarital debt and excluding it from

consideration in connection with the overall division of marital assets and liabilities, the

trial court misapplied the law. Accordingly, the Judgment's treatment of this debt is

reversed, and we remand this matter to the trial court with instructions to list the Cabela's

credit card debt as a marital debt in the Judgment, and to then consider that debt in

connection with its overall division of marital assets and liabilities "in such proportions as

the court deems just" pursuant to section 452.330.1.16 Alport, 571 S.W.3d at 685.

 Husband's Point Five is granted in part and denied in part.

Point Six: The Trial Court did not Error in Dividing Household and Personal Goods

 Husband's sixth point on appeal argues that: "The trial court erred in its findings

related to the marital property because the trial court's judgment is contradictory in that the

trial court failed to include on Exhibit D items in Wife's possession which she removed

from the marital home but including [sic] everything in Husband's possession and also by

ordering certain personal property to be sold while also ordering that the same items could

be selected by the parties to keep."

 15
 We note that trial court would not have been able to exclude post-separation debt from its consideration
of the division of marital property, had it found that the debt was marital. See Jones v. Jones, 277 S.W.3d 330, 338-
39 (Mo. App. W.D. 2009).
 16
 This Opinion should not be read to suggest or control how the trial court's allocates responsibility for the
Cabela's credit card debt. The trial court is not required to make an equal distribution of the marital debt, though its
distribution of marital liabilities "must be fair and equitable under the circumstances of the case." Finch v. Finch,
442 S.W.3d 209, 215 (Mo. App. W.D. 2014) (quoting Hart v. Hart, 210 S.W.3d 480, 485 (Mo. App. W.D. 2007)).
Husband even concedes: "The trial court could assign the [Cabela's credit card] debt to Husband, but to exclude it
from the marital property and debt distribution was an abuse of discretion and trial court error."

 30
 Husband's point is multifarious in violation of Rule 84.04(d) because it "groups

together multiple, independent claims rather than a single claim of error" and thus is it

subject to dismissal. Estes as Next Friend for Doe v. Bd. of Trs. of Mo. Pub. Entity Risk

Mgmt., 623 S.W.3d 678, 703 n.21 (Mo. App. W.D. 2021) (quoting Sanders v. City of

Columbia, 602 S.W.3d 288, 296 n.5 (Mo. App. W.D. 2020)). Moreover, the second

discrete issue raised by Husband's point on appeal (which contends that the Judgment was

contradictory because some of the items contained in Exhibit D ordered to be alternatively

selected by the parties were also ordered to be sold because they were listed on the parties'

2018 Federal Depreciation Schedule) is not preserved for our review. This argument

plainly implicates the form or language of the Judgment, but was not raised by Husband in

a post-trial motion as required by Rule 78.07(c). We decline to review the second argument

raised in Husband's sixth point on appeal.17 As that leaves only the first argument in

Husband's multifarious point on appeal to be addressed, we exercise our discretion to do

so, ex gratia.

 With respect to the first issue raised by Husband in his sixth point on appeal, the

trial court found that Husband's testimony and valuation of the parties' household and

personal goods was not credible and it ordered the following:

 All personal property, including firearms and farm equipment, not
 specifically included in the parties' [2018 Federal Depreciation Schedule],
 and as identified in Wife's [Exhibit O], attached hereto as Exhibit D, shall be
 placed in one location and each party shall then alternate choosing items of
 personal property, firearms, and farm equipment, not specifically included in

 17
 Even if preserved, we would find this argument without merit, as it is immediately disproven by the
language of the trial court's Judgment, which ordered that the parties shall alternatively select items contained in
Exhibit D which were "not specifically included in the parties' [2018 Federal Depreciation Schedule] until all
property is divided."

 31
 the parties' [2018 Federal Depreciation Schedule], until all property is
 divided.

Exhibit D attached to the Judgment contains a list of "items currently in Wife's possession"

which is approximately half of a page, and a list of "items currently in Husband's

possession" which is approximately four pages long.

 Although Husband does not express his argument as such, he effectively argues that

the trial court failed to distribute all marital assets, in that he claims that Exhibit D (the list

of items to be alternatively selected by the parties) disproportionately included all of the

household and personal goods remaining in Husband's possession while not including

some of the items in Wife's possession. He cites to Wife's Exhibit M which sets forth the

items Wife removed from the home. Husband argues that this list is two pages long and

contains "far more" items than the list of "items currently in Wife's possession" on Exhibit

D. The crux of Husband's argument is that when the parties make their alternating

selections from Exhibit D, Wife will be entitled to receive close to half of the items still in

his possession, while Husband will be entitled to choose fewer items in Wife's possession.

 Initially, we question Husband's logic, as based on the evidence, Husband retained

possession of the marital home and farmland, along with all of the farm equipment, and

thus had physical possession of more of the marital property than Wife. Stated another

way, the fact that more items on Exhibit D are in Husband's possession does not in and of

itself suggest that division of the items through alternate selections will result in a

disproportionate distribution.

 32
 More importantly, Husband's argument ignores that all of the household and

personal goods not listed on Exhibit D had already been divided amongst Husband and

Wife. On Exhibit M, Wife listed the items she removed from the home, and on Exhibit N,

Wife listed the items Husband retained. These items do not duplicate what is listed on

Exhibit D. Wife testified that the value of the items on Exhibits M and N are roughly

equivalent. Any testimony by Husband to the contrary was found to be not credible. And

no party asked the trial court to modify the parties' informal division of household and

personal goods as reflected on Exhibits M and N. Exhibit D, then, simply reflects a list of

household and personal goods not already informally divided between the parties by

agreement.

 Husband's Point Six is denied.

Point Seven: The Trial Court did not Err in Ordering Liquidation of the Marital Home
and Farmland

 In his final point relied on, Husband argues that the trial court abused its discretion

in ordering the sale of the marital home and farmland with an equal division of the proceeds

because he "testified he wanted to keep the home and farm for the benefit of the minor

children," and because the trial court incorrectly concluded that Husband would be unable

to afford the home while simultaneously paying child support.

 Husband's claim of error is directly refuted by his testimony at trial. Husband

testified that he was only able to make the temporary child support payments of $1,350 per

month because he received $12,983 in tax refunds. When asked whether the "$1,350

payment was difficult for [him] to make" when he only had his postal service income,

 33
Husband responded, "Yes." Though Husband operates a farm, no farming income was

attributed to Husband on the trial court's Form 14, likely because Husband's testimony on

the subject was evasive. Husband testified that he farmed only as a hobby and helped his

dad for fun, and that his father does not compensate him for the substantial assistance that

he provides. Finally, Husband also testified that he would not be able to come up with

Wife's requested equalization payment if he kept the marital home and farmland. The

Judgment ordered Husband to pay $1,357 per month in child support, an amount this is not

materially distinguishable from the temporary child support obligation Husband testified

he was having trouble affording.

 Notwithstanding this trial testimony, Husband now argues that he "submitted a

proposal that demonstrated that it was possible for him to keep the marital home and

farmland." However, Husband's proposal was based off of an appraisal of the property that

the trial court rejected. Husband's appraisal valued the real estate at $362,500, and Wife's

appraisal valued the real estate at $440,000. In ordering the property to be sold with

proceeds divided, the trial court ordered the parties to "sign and fully execute any real estate

contract . . . so long as a 'clean contract' is tendered by a buyer of at least $418,000,

representing 95% of the appraised value of $440,000.00." The trial court thus accepted

Wife's appraised value. Husband's proposal also presumes he will be given a credit for

marital debts in the amount of $293,166, which would substantially lower the net equity in

the property and thus the equalization payment he would be ordered to pay to Wife. The

Judgment reflects no such credit. Husbands request that we find error in the trial court's

 34
order to sell the marital real estate based on a flawed proposal he presented to the trial court

to suggest he could afford to keep the property is unpersuasive.18

 Husband relies on Handy v. Handy, 338 S.W.3d 852, 856-57 (Mo. App. W.D. 2011)

to argue that while "the trial court has substantial discretion when dividing the marital

property, . . . there are some judicially-recognized principles related to the forced sale of

marital real estate" that we must consider. It is true that, "[i]n general, in order for the court

to properly order a sale of marital property, it must find that (1) an in-kind division of the

property is infeasible; and (2) a forced sale is in the interest of at least one party." Id.

(citation omitted). An in-kind division of the marital property is feasible "if it is possible

to award one spouse the real estate in its entirety and offset that award by giving the other

spouse different marital property of approximately equal value, [and] then the real estate

need not be sold." Id. at 857 (quoting Galloway v. Galloway, 122 S.W.3d 705, 707–08

(Mo. App. E.D. 2003)).

 Both criteria for ordering a forced sale of the marital real estate are established on

this record. Husband has not identified other marital property of equal value to the real

estate that the trial court could have awarded to Wife in lieu of a forced sale of the real

estate. And a forced sale of the marital real estate is plainly beneficial to Wife as it will

result in the distribution of cash assets to her that will assist her ability to support herself.

 18
 Husband also argues, "[a]s noted previously, Husband contends the trial court erred and abused its
discretion in not awarding him overnights. The trial court's error in that regard also impacted the award of child
support as the trial court gave no credit to Husband on line 11 [of its Form 14] for overnights." The essence of
Husband's argument is that if the trial court had granted him overnights, that he would then owe less in child
support, and he would thereby be able to afford to pay the mortgage and child support simultaneously. Husband has
not argued that the trial court erred in not awarding him overnight parenting time anywhere else in his brief, and he
certainly has not included this contention in any of his points relied on. Thus, we decline to review this alleged
error. See KDW Staffing, LLC, 584 S.W.3d at 837 n.4.

 35
The trial court did not abuse its discretion in ordering the liquidation of the marital real

estate. Torres, 606 S.W.3d at 174.

 Husband's Point Seven is denied.

 Wife's Cross Appeal

Point One: The Trial Court did not Err in Denying Wife's Request for Maintenance

 Wife's first point on appeal argues that: "The trial court erred in not granting

maintenance to [W]ife in that it was an abuse of discretion to not award maintenance in

that pursuant to [section] 452.335 Wife is entitled to maintenance in that she lacks

sufficient property to provide for her reasonable needs and is unable to support herself

through appropriate employment and husband has the ability to pay maintenance."

 The trial court has broad discretion in awarding maintenance, and its decision
 will not be overturned absent an abuse of discretion. To determine whether
 the trial court abused its discretion, this court reviews the evidence in a light
 favorable to the decree, disregarding any evidence to the contrary and
 deferring to the trial court's judgment even if the evidence could support a
 different conclusion.

Richardson v. Richardson, 564 S.W.3d 711, 717 (Mo. App. W.D. 2018) (quoting Hammer

v. Hammer, 139 S.W.3d 239, 240 (Mo. App. W.D. 2004)).

 The trial court found that Wife's request for maintenance was "without merit" but

made no other findings related to maintenance. In connection with calculating child

support, the trial court did find that "Wife's monthly gross income for purposes of

calculating child support is zero."19

 19
 "Absent an evidentiary or legal basis for treating the calculations differently, a trial court may not treat
imputation of income on its Form 14 child support calculations in a different manner than in its maintenance
calculations." Donovan v. Donovan, 191 S.W.3d 702, 706 (Mo. App. W.D. 2006) (quoting In re Marriage of Neu,
167 S.W.3d 791, 796-97 (Mo. App. E.D. 2005)).

 36
 Section 452.335.1 provides that a trial court may grant maintenance, "but only if it

finds that the spouse seeking maintenance: (1) [l]acks sufficient property, including

marital property apportioned to [her], to provide for his reasonable needs; and (2) [i]s

unable to support [her]self through appropriate employment or is the custodian of a child

whose condition or circumstances make it appropriate that the custodian not be required to

seek employment outside the home." (Emphasis added.) "The spouse seeking maintenance

has the burden of establishing these threshold requirements." Martin v. Martin, 483 S.W.3d

454, 459 (Mo. App. W.D. 2016) (quoting Alberty v. Alberty, 260 S.W.3d 856, 859 (Mo.

App. W.D. 2008)). "Only after these threshold requirements are proven by the spouse

seeking maintenance may the trial court proceed to the second step: determining the

amount and duration of the maintenance award" pursuant to the factors set forth in section

452.335.2. Id. (citation omitted).

 Wife's brief focuses on two arguments: (1) that there was evidence from which the

trial court could have found that she was unable to support herself through appropriate

employment because she was last employed before Son was born, and even then, she only

made $12,000 per year, and would incur "approximately $1,400 per month in childcare

expense[s]" if she returned to work; and (2) that Husband has the ability to pay maintenance

based upon his income which should have included alleged proceeds from his cattle

operation.

 Wife's argument concerning Husband's ability to pay maintenance is irrelevant to

determining whether the trial court erred in denying her request for maintenance.

Husband's ability to pay is a factor to be considered when determining the amount of

 37
maintenance. But issues regarding the amount of maintenance that should be awarded are

not reached until the threshold requirements for an award of maintenance have been

established. Section 452.335.2; Martin, 483 S.W.3d at 459. Here, the trial court found

Wife failed to establish the threshold requirements for an award of maintenance.

 With respect to that subject, Wife's argument that she was unable to support herself

is also problematic. Wife fails to account for the value of the marital property allocated to

her by the Judgment, though section 452.335.1 permits an award of maintenance only if

the trial court finds that the spouse seeking maintenance "[l]acks sufficient property,

including marital property apportioned to [her], to provide for [her] reasonable needs."

(Emphasis added.)

 The trial court ordered the marital home and adjoining farmland, appraised at

$440,000, to be sold and the proceeds divided equally. Moreover, the trial court ordered

all marital farm equipment listed on the 2018 Federal Depreciation Schedule, as well as 50

head of cattle, to be liquidated and the proceeds divided equally. The trial court also

awarded Wife half of Husband's pension and retirement benefits accrued during the

marriage, as well as half of any stimulus payment. Finally, the trial court ordered Husband

to pay Wife "$34,440 in compensation to equalize the property distribution." Wife "is not

required to deplete or consume . . . her portion of the marital assets before being entitled to

maintenance[,] [h]owever, the interest [she] can earn from . . . her share of the marital

property must be considered when determining whether . . . she is in need of maintenance."

Schubert, 366 S.W.3d at 64-65 (citing Pearson v. Pearson, 22 S.W.3d 734, 737 (Mo. App.

W.D. 2000); Breihan v. Breihan, 73 S.W.3d 771, 778 (Mo. App. E.D. 2002)).

 38
 Because Wife has not addressed the impact of the value of marital property awarded

to her by the Judgment, we reject her argument that the trial court abused its discretion

when it denied her request for maintenance.

 Wife's Point One is denied.

Point Two: The Trial Court did not Err in Prospectively Awarding Husband Overnight
Parenting Time when the Youngest Child Turns Five
 In her second point on appeal, Wife argues that the trial court erred when it granted

Husband overnight custody when Daughter, the youngest child, turns five years old

because the decision was against the weight of the evidence and speculative "in that there

was no indication or evidence that [Husband] will be able to properly care for the children

during overnights when [Daughter] turns five."

 The guardian ad litem's proposed parenting plan provided for Husband to have

parenting time: "(a) Every Tuesday and Thursday from 3:30 p.m. until 7:00 p.m." and "(b)

Every other Saturday from noon until 7:00 p.m., if [Husband] is not working on Saturday;

and every other Sunday from noon until 7:00 p.m." The trial court awarded Wife sole legal

and physical custody of the Children, subject to Husband's exercise of parenting time as

set forth in the guardian ad litem's proposed parenting plan, "with the exception of granting

Husband overnight visitation on the Saturdays of his regular weekends when the youngest

child reaches the age of five (5) years."

 Wife argues that the trial court's award of overnight parenting time to Husband when

Daughter turns five years old is unenforceable because the prospective increase in

parenting time "is in effect a modification of [] custody without a hearing or trial." We

 39
disagree. Here, the issue is not whether a prior decree of dissolution should be modified,

but is instead whether a provision in the decree of dissolution addressing parenting time is

sufficiently definite to be enforceable.

 It is generally true that "[p]rovisions in a decree relating to child custody or

visitation should be definite and indefinite provisions are void and unenforceable." Johnson

v. Debyle, 312 S.W.3d 460, 463 (Mo. App. S.D. 2010) (citing Hunt v. Hunt, 65 S.W.3d

572, 577 (Mo. App. S.D. 2002)). Thus, as a general rule, judgments which "call for an

automatic change in custody upon the happening of some future event are unenforceable."

Courtney v. Courtney, 458 S.W.3d 462, 472 n.2 (Mo. App. E.D. 2015) (citing Burch v.

Burch, 805 S.W.2d 341, 343 (Mo. App. E.D. 1991)).

 However, prospective changes to parenting time awarded in an original decree of

dissolution based on the occurrence of a future event that is not conditional or indefinite

are enforceable. Thus, our courts have affirmed prospective changes in parenting time set

forth in a judgment of dissolution when the change is tied to a child attaining a certain age

or beginning a certain grade in school. Abbott v. Perez, 140 S.W.3d 283, 291 (Mo. App.

E.D. 2004) (holding that judgment prospectively modifying father's parenting time when

child turned five years old and was enrolled in school was not a conditional judgment

because neither parent was "required to perform or refrain from performing any future act

as a condition of the enforcement of the custody provisions. Rather, the focus [was on the

child] who, barring a tragedy, will undoubtedly reach age five and enroll in elementary

school."); Pijanowski v. Pijanowski, 272 S.W.3d 321, 327 (Mo. App. W.D. 2008) (holding

that judgment which provided for a change in parenting time once child entered

 40
kindergarten was enforceable because its enforcement was "not dependent upon future acts

by the parties but [was], instead, based upon the known need of the child to have a

predictable and stable custody arrangement, particularly when school begins."). Cf.

Courtney, 458 S.W.3d at 472 n.2 (holding that provision in judgment conditioning father's

parenting time upon negative drug and alcohol tests, and providing he would lose overnight

parenting time previously awarded upon a future positive test was unenforceable.).

 Wife acknowledges the holding in Pijanowski, 272 S.W.3d at 327, but argues that

Daughter turning five years old is not equivalent to enrolling in school. We see no basis

to legally differentiate between the two events, as both are sufficiently definite and are not

conditioned upon a future act by Husband or Wife. Moreover, Wife's argument ignores

the holding in Abbott, 140 S.W.3d at 291, where a provision in a dissolution judgment

prospectively changing parenting time when a child reached a stated age was held to be

enforceable.

 Wife also argues that the ordered change in Husband's parenting time when daughter

turns five is speculative. However, the Judgment's award of overnight parenting time to

Husband when Daughter turns five is not speculative, as we have already explained.

 Finally, Wife argues that the prospective change to Husband's parenting time was

against the weight of the evidence because there was no evidence that Husband would

develop better parenting skills in a year and a half, "nor that he will somehow have obtained

the parenting skills necessary that will make it in the children's best interest to have

increased overnights with [him]." Importantly, Wife has not challenged the fact that

Husband was awarded unsupervised parenting time in the Judgment, though her assertion

 41
about Husband's poor parenting skills would be salient to such a challenge. Rather, Wife

only takes issue with Husband's parenting time increasing every other Saturdays from noon

until 7:00 p.m., to noon until the next morning. Wife articulates no reasoned basis to

challenge this moderate expansion of Husband's parenting time when Daughter turns five

based on Husband's alleged poor parenting skills.

 Wife's contention is also deficient because she has failed to undertake the required

analysis for an against-the-weight-of-the-evidence challenge. "An against-the-weight-of-

the-evidence challenge presupposes the existence of substantial evidence to support the

outcome--that is, the argument presumes there was some evidence with 'probative force on

each fact necessary to sustain' it." Meseberg, 580 S.W.3d at 65 (quoting Holm v. Wells

Fargo Home Mortg., Inc., 514 S.W.3d 590, 596 (Mo. banc 2017)). Wife, as the party

asserting an against-the-weight-of-the-evidence challenge, must follow a four-step

analytical process:

 (1) identify a challenged factual proposition, the existence of which is
 necessary to sustain the judgment;

 (2) identify all the favorable evidence in the record supporting the existence
 of that proposition;

 (3) identify the evidence in the record contrary to the belief of that
 proposition, resolving all conflicts in testimony in accordance with the trial
 court's credibility determinations, whether explicit or implicit; and,

 (4) demonstrate why the favorable evidence, along with the reasonable
 inferences drawn from that evidence, is so lacking in probative value, when
 considered in the context of the totality of the evidence, that it fails to induce
 belief in that proposition.

 42
Interest of B.K.F., 623 S.W.3d 792, 796-97 (Mo. App. W.D. 2021) (quoting Meseberg, 580

S.W.3d at 66).

 Wife identifies the factual proposition that she challenges, which is the trial court's

finding that it is in the Children's best interests that Husband have overnight parenting time

once Daughter turns five years old. And Wife identifies some, albeit bare, evidence in the

record that could be viewed as contrary to that finding. However, Wife fails to

acknowledge the evidence and inferences that support the trial court's finding, and she fails

to demonstrate why the favorable evidence and inferences were so lacking in probative

value, when considered in the context of the entire record, as to fail to induce the finding

that overnight custody of the Children one night every other week upon Daughter's fifth

birthday was in the Children's best interests. Wife's omission of material favorable

evidence from her brief renders her argument without "any analytical or persuasive value."

Id. at 797 (quoting J.A.R. v. D.G.R., 426 S.W.3d 624, 631 n.12 (Mo. banc 2014)).

 The trial court did not err in including a provision in the Judgment increasing

Husband's parenting time with the Children once Daughter turns five years old.

 Wife's Point Two is denied.

 Conclusion

 The trial court's Judgment is affirmed in part and reversed in part. The Judgment is

reversed with respect to its ordered sale of the stock trailer and gooseneck trailer, and with

respect to its failure to treat the Cabela's credit card debt as a marital debt. On remand, the

trial court is instructed to remove the stock trailer and gooseneck trailer from the list of

marital property identified in paragraph 22(f) of the Judgment to be liquidated with

 43
proceeds divided, and to otherwise determine the value of the marital interest in the trailers

and how the marital interest should be distributed, mindful of the partial ownership interest

in the trailers held by Husband's cousin and her spouse. The trial court is also instructed

on remand to add the Cabela's credit card debt to the list of marital debts in the Judgment,

and to determine how responsibility for that debt should be assigned.

 Finally, the trial court is instructed on remand to determine whether the overall

division of marital assets and liabilities is fair, equitable, and just pursuant to section

452.330.1, in light of the specific modifications to the Judgment herein ordered, and is

authorized to make such other modifications to the Judgment's division of marital assets

and liabilities as the trial court deems appropriate as a result.

 __________________________________
 Cynthia L. Martin, Judge

All concur

 44